Mrs. G. P. Snow *v.* United States (No. 4034)[1]

United States Court of Customs and Patent Appeals, December 21, 1936

*Manheim Rosenzweig (James Carroll* of counsel), for appellant.

*Joseph R. Jackson,* Assistant Attorney General (*Charles D. Lawrence,* Special Assistant to the Attorney General, and *John F. Kavanagh,* special attorney, of counsel), for the United States.

[Oral argument December 9, 1936, by Mr. Carroll and Mr. Lawrence]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

LENROOT, Judge, delivered the opinion of the court:

This is an appeal in a reappraisement proceeding wherein the United States Customs Court, First Division, rendered a decision, Judge Brown specially concurring, affirming the judgment of the single judge sitting in reappraisement, dismissing appellant's appeal to reappraisement. The division, however, inadvertently entered judgment, not in accordance with the decision, but in the following words:

This case having duly come on for trial before the First Division of the United States Customs Court, and the same having been heard and submitted for decision, and the Court, after due deliberation, having rendered a decision herein, in favor of the appellee and against the appellant now, in conformity with said decision,

It is Hereby Ordered, Adjudged, and Decreed, that the application for review be, and the same is hereby, dismissed.

The merchandise involved consisted of fashion drawings, the work of French artists, prepared for the use of a magazine known as "Harper's Bazaar", depicting the latest French fashions for women's clothing. They were imported under the Tariff Act of 1930.

These drawings were entered and invoiced at $15 each. Two of them were appraised at $300 each, and the remaining four at $200 each. It appears from the record that this appraisement was predicated upon a statement made by the importer to the appraiser that the aforesaid amounts would be paid for the drawings by Harper's Bazaar. It is established by the record that there was no foreign, export, or United States value of the drawings, and that in order to appraise the drawings the cost of production must be resorted to. While Judge Brown in his concurring opinion took the position that an export value of the drawings had been established by the record, and for that reason concurred in the conclusion reached by the majority, we are not in agreement with his view. There is nothing in the record establishing that the price to be paid by Harper's Bazaar for the drawings accords with a free offering at that price to all purchasers in the principal markets in France for exportation to the United States. See *United States* v. *Malhame & Co.*, 19 C. C. P. A. (Customs) 164, T. D. 45276.

Upon the trial before the single judge, it was contended that the entered value was the cost of production of the drawings, and that such cost was $15 each.

The court found and the record establishes that the local appraiser did not consider separately the different elements entering into the cost of production set out in section 402 (f) of the Tariff Act of 1930, which reads as follows:

SEC. 402. VALUE.

\*       \*       \*       \*       \*       \*       \*

(f) COST OF PRODUCTION.—For the purpose of this title the cost of production of imported merchandise shall be the sum of—

(1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2) The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;

(3) The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same

general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

The last sentence of the first paragraph of section 501 of said tariff act reads as follows:

* * * The value found by the appraiser shall be presumed to be the value of the merchandise and the burden shall rest upon the party who challenges its correctness to prove otherwise.

The first question to be considered is whether the appraisement by the local appraiser was null and void.

To state the question more broadly, where the local appraiser fails to consider, in making an appraisement, all of the elements specified by the statute to be considered, is such an appraisement null and void, rendering reappraisement of the merchandise improper?

This is a question of law which has been decided adversely to the contention of appellant here in the case of *United States* v. *F. W. Woolworth Co. et al.*, 22 C. C. P. A. (Customs) 184, T. D. 47126. We there said:

Under the Tariff Act of 1930 the value which the local appraiser found is made presumptively correct, but this presumption, like all other legal presumptions, is just that and nothing more. If the appraisement be defective for a purely legal reason, or if the evidence shows errors of fact, or if there be errors of both law and fact, obviously it is the duty of the single judge so to declare. But this is only a part of the requirement of the statute. Appraisement lies at the very basis of customs administration, and surely it is the clear intent of Congress that an appraisement shall be had as speedily and with as little difficulty as may be possible.

Nothing practical is accomplished by simply upsetting the valuation of the local appraiser and stopping there. Certainly every intendment of the statute is to avoid any such *impasse.* Hence the requirement that the single judge shall determine value. As we view it, that is the fundamental object of the jurisdiction conferred by the statute.

* * * * * * *

The statute provides that the division of three judges "shall affirm, reverse, or modify the decision of the single judge or remand the case to the single judge for further proceedings." The authority thus given is very broad. Certainly the appellate division passes upon questions of both law and fact. We think that it may appraise, that is, find the dutiable value, and that it is its duty so to do in all cases where the appraiser had the power to appraise the merchandise at the time the appraisement was made. If it regards the value found by the single judge as both legally and factually correct, it should affirm such value. If not regarded as correct, it should find what is the value, or, if the record be insufficient, in its opinion, to enable such finding, the case should be remanded to the single judge with directions to dismiss the appeal to reappraisement or for a new trial, as the division may determine. We think that no case, in which appraisement is required and in which the elements are present that enable appraisement, should be left suspended in mid-air to the detriment, if not the complete paralysis, of administration. Accordingly we feel that in cases where the tribunals of the United States Customs Court, when functioning in reap-

praisement proceedings, find erroneous the valuation of the local appraiser, they should themselves find value if the record warrants such a finding. Their authority is ample, and, in our opinion, the duty so to do is mandatory. Unless it is done by them it cannot be done. This court is without the power which is theirs, and we know of no other tribunal to which those interested may turn.

Following the above quotation, we pointed out the class of cases where there could be no reappraisement, because of lack of power or jurisdiction of the local appraisers to appraise the merchandise, such as where the merchandise involved was not subject to appraisement, or where, under the statute, the appraiser had no power to appraise the merchandise because of failure by the collector to designate the number of packages required by law for examination by the appraiser.

Our decision in the last-cited case, in the respect above referred to, has been expressly approved by us in the case of *United States* v. *Beermaker, etc.*, 23 C. C. P. A. (Customs) 48, T. D. 47714.

Here, the local appraiser clearly had the power to appraise the drawings, and presumably all of the elements necessary to appraisement were available. We therefore hold that the drawings here involved were subject to reappraisement.

We next come to consider whether there is any substantial evidence in the record upon which a finding of cost of production could be based. Appellant contends that the cost of production of the drawings was $15 each. Upon the point of cost of production, appellant testified as follows:

Q. What, Mrs. Snow, in your opinion, is the cost of the material in each of these drawings?—A. Well, we have always nominally put it at $15, but that is as close as we can arrive at.

Judge DALLINGER. What do you mean, cost of material?

The WITNESS. Paper and paint.

By Mr. CARROLL:

Q. Do you make any allowance in that $15 for monies the artist might have had to spend in going, for instance, to——A. Taxis, yes. I mean, any expenses, taxis to or back and from the dressmaker's place; otherwise not.

Q. Do you make any allowance for the time the artist puts into it?—A. Well, no, because that, to us, would be perfectly impossible. We don't pay; we don't care about the time. Some artists take exactly an hour to make a sketch, and others may do and redo and redo again; it takes them two weeks. That doesn't concern us. We want a good drawing of that dress.

Obviously, here was no attempt to establish the value of the drawings in the manner required by the statute. Nothing is added for profit, which the statute requires shall be not less than 8 per centum of the sum of the amounts found under items 1 and 2 of section 402 (f). Neither were the items of cost of production separated as required by said section, and the appellate division properly so found.

In the case of *Philipp Wirth et al.* v. *United States*, 23 C. C. P. A. (Customs) 283, T. D. 48144, we had before us the question of the

construction of section 402 (e) of the Tariff Act of 1922, which was identical with section 402 (f) of the Tariff Act of 1930. We there held that, as to item 1, the statute did not require that the elements therein named should be separately shown, but we also held that items 1, 2, 3, and 4 must be separately established in a reappraisement proceeding. In our decision in that case, after reviewing certain cases, we said:

* * * There seems to be nothing in these cases which forms any basis for the holding that under the Tariff Act of 1922, the items of cost provided for in said subsection (1) must be shown in detail in order to constitute proof of cost of production.

As a matter of fact, it seems to us to be plainly indicated by the said section and its arrangement, that the Congress intended the cost of production to be shown and to be itemized, the items to consist of the four elements which are separately enumerated in said section 402 (e). If further itemization had been required, we have no doubt the Congress, in drafting the act, would have so provided. The fact that the Congress did not do so plainly evinces that no further itemization was required.

That the burden was upon appellant to establish the cost of production in the manner provided by law is well settled. *United States* v. *Malhame & Co., supra; Garbey* v. *United States*, 24 C. C. P. A. (Customs) 48, T. D. 48332.

Both the single judge and the appellate division rightly decided that appellant failed to establish the cost of production of the involved drawings.

Certain other contentions of appellant will be briefly noticed. She claims that, inasmuch as she has established that the local appraiser failed to consider all of the elements of cost of production set out in section 402 (f), to compel her to pay the duties resulting from the appraisement by the local appraiser would deprive her of her property without due process of law.

There are two answers to this contention: 1. That the statute itself provides a remedy for an erroneous appraisement, and appellant had full opportunity to establish in the manner provided by law the value of the drawings, which would become their dutiable value. 2. As was said by the Supreme Court of the United States in the case of *Board of Trustees of the University of Illinois* v. *United States*, 289 U. S. 48—

The Congress may determine what articles may be imported into this country and the terms upon which importation is permitted. No one can be said to have a vested right to carry on foreign commerce with the United States. * * *

Appellant cites the case of *Louisville & N. R. Co.* v. *Greene*, 244 U. S. 522, involving the valuation of certain railroad properties in the State of Kentucky, and quotes therefrom as follows:

* * * It being shown that the valuation made by the Board was the result of following a method substantially erroneous because not in accordance with the

statute, there is no presumption that a like valuation would have been reached by following a correct method.  \* \* \*

It is sufficient to say upon this point that this case has no application here for the reason that Congress, in section 501, created a presumption of the correctness of the value found by the local appraiser and placed the burden upon the importer to establish that such value was not correct.  Moreover, Congress has provided a judicial tribunal in the Customs Court whereby there may be a judicial determination of the value of imported merchandise, thus fully safeguarding the rights and interests of importers.

Appellant also cites a number of the earlier decisions of this court, rendered prior to the enactment of the Tariff Act of 1922.  With respect to such cases we would observe that they arose under tariff acts wherein the reviewing authorities were not considered as acting as judicial tribunals; but since the enactment of the Tariff Act of 1922 the reviewing authorities, now the United States Customs Court, acting through a single judge and an appellate division, do exercise judicial functions, whereby a party aggrieved by an appraisal made by a local appraiser has the opportunity to establish judicially the value of merchandise appraised in all cases where merchandise is subject to appraisement and the local appraiser has the power to appraise the same.  *Johnson Co.* v. *United States*, 13 Ct. Cust. Appls. 373, T. D. 41318.

However, the case of *United States* v. *F. B. Vandegrift & Co. et al.*, 16 Ct. Cust. Appls. 398, T. D. 43120, arose under the Tariff Act of 1922 and is especially relied upon by appellant in support of her contention that the appraisement herein involved, made by the local appraiser, is void.

With respect to this case we would first observe that the Tariff Act of 1922 did not contain the provision of section 501 of the Tariff Act of 1930, relating to the presumption in respect to the value found by the appraiser, hereinbefore quoted.  In the second place, the question before the court was not the validity of the appraisement made by the local appraiser, but whether the record in the reappraisement proceeding established either a foreign value of the imported merchandise or the cost of production thereof.  The court held that there was no substantial evidence to support a finding on either point.  There the examiner testified that the basis of his appraisement was "the cost of production as stated on the invoices", and the reappraising justice adopted the same basis for his finding of cost of production.  The appellate division reversed the judgment of the reappraising justice. This court affirmed the finding of the appellate division that the evidence did not disclose a sufficient basis upon which to fix cost of production, but reversed the judgment of the appellate division upon another point and remanded the case for a new trial.  An examination

of the opinion of this court in that case discloses that the appraisement made by the local appraiser was not held to be void, and this significant language was used:

We conclude, therefore, that the record made by the reappraising justice contains no substantial evidence in support of either foreign value, export value, United States value, or cost of production. In other words, at the conclusion of the hearing before Associate Justice Weller, he had no evidence before him upon which he might appraise the dutiable value of the imported goods. The reappraisement made by the single justice must be based upon such evidence as is introduced by the parties at the hearing. *United States* v. *McConnaughey & Co.*, 13 Ct. Cust. Appls. 112 [118], T. D. 40944. It was equivalent to a situation where, an appeal having been prayed, the appellant fails to prosecute, or abandons his appeal. Under such circumstances the single justice might well have dismissed the appeal, upon the motion of either party, or upon his own motion. In such event the case would have stood as if no appeal had been taken and the appraisement made by the local appraiser would again have become vital and effective. A party may not appeal for a reappraisement and thereafter abandon or fail to prosecute his appeal and thereby defeat the appraisement. He is the moving party and must prosecute his appeal. It is true that after such appeal is prayed and some substantial evidence is before the reappraising justice, further consideration of the appraisement made by the local appraiser is eliminated. Until that happens, however, this appraisement is simply suspended and subject to reinstatement upon the dismissal of the appeal by the reappraising justice.

It thus appears that, instead of supporting the contention of appellant, the case last cited supports the conclusion here reached, which is in accord with the findings of the reappraising tribunals herein.

Appellant contends that at the time of the importation of the drawings they were subject to approval, and might have been rejected by the magazine Harper's Bazaar, in which case they would have been worthless. Granting that this be true, it would have been necessary for appellant to establish the cost of production as required by the statute. Whether or not merchandise becomes worthless *after* importation is immaterial. Appellant may not avoid statutory requirements by pointing to contingencies which might have arisen.

For the reasons stated, the *decision* of the appellate division must be *affirmed*, but because of the inadvertence in the form of the judgment entered by it, referred to in the early part of this opinion, the cause must be *remanded*, and the appellate division is directed to *modify* its judgment to accord with its decision by affirming the judgment of the single judge.