UNITED STATES *v.* F. B. VANDEGRIFT & Co. ET AL. (No. 3097)[1]

---

[1] T. D. 43120.

United States Court of Customs Appeals, November 30, 1928

*Charles D. Lawrence*, Assistant Attorney General (*Peter A. Abeles*, special attorney, of counsel), for the United States.

*Comstock & Washburn* (*J. Stuart Tompkins* of counsel) for appellees.

[Oral argument October 12, 1928, by Mr. Lawrence and Mr. Tompkins]

Before GRAHAM, Presiding Judge, and BLAND and HATFIELD, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

F. B. Vandegrift & Co. made six, and Alex. Murphy & Co., two, entries of woolen samples at the port of Philadelphia. The samples in question imported by Vandegrift & Co. are made up into booklets, each booklet containing about 30 pieces of cloth, each piece being about 5 by 7 inches in size and cut with slightly scalloped edges. The booklets are bound at one end with metal staples and are faced with two cardboard strips bearing the words "Heather Mills Company" on one side, and "Selkirk, Scotland," on the obverse. They are each fitted with a silk cord for use in hanging the same on a wall. In the *Murphy* case two kinds of samples are involved. One kind consists of plain cut pieces of cloth, 6 by 9 inches in size; the other consists of similar pieces, 9 by 14 inches in size. These Murphy samples were not bound into booklets. The testimony shows that the samples are cut from bolts of new cloth at the mills where produced and are shipped to importers, who use them for the purpose of making sales of goods in stock, for merchant-tailor purposes.

These samples were classified by the collector as woven fabrics, wholly of wool, under paragraph 1109 of the tariff act of 1922; as such they were held dutiable according to their value per pound as fixed by said paragraph. In entries Nos. C 9905 of the Vandegrift Co. and 6983 of the Murphy Co., the entered values were claimed to be the value of the samples as rags at the date of exportation. The remaining goods were entered at advanced values, to meet advances in pending cases.

In entry No. C 9905 of the Vandegrift Co. the appraiser fixed the dutiable value at the same amount as the invoice value of the cloth in the bolt for commercial purposes. In entry No. 6983 of the Murphy Co. the appraiser advanced the invoice price of the samples there involved from 11 shillings 6 pence to £7, which was stated by him in a notation upon the invoice to be the "correct market value" of the same. In the other entries the entered values were the invoice prices.

Upon consolidated appeal to reappraisement in all the said appraisements, the appraised values were held by Justice Weller to be

the dutiable values. In coming to this conclusion the justice found that there was no foreign, export, or United States value established, that the cost of production should be taken as the dutiable value, and that this had been properly found and fixed by the appraiser. Separate applications for review were filed by the appellants. On review, the Customs Court, by separate judgments and with separate opinions, reversed the finding of the single justice and found that the imported goods had a foreign value, that such values were those given in the invoices not under duress, in other words, the rag values, and that such values should be taken as the dutiable values. The Government has appealed from these judgments, alleging that the Customs Court erred and that, on this record, the appraisement made by Justice Weller should stand.

Section 402, Tariff Act of 1922, furnishes the rule for fixing dutiable value. This section provides that the foreign value or the export value, whichever is higher, shall be taken; if there be no such foreign or export value, then the United States value; if none of these, then the cost of production; and, finally, if there be any similar competitive article as to which the President has made a public finding as provided in subdivision (b) of section 315 of Title III of said act, then the American selling price of such article. All consideration of any American selling price is eliminated from this case by the failure of the parties to establish in the record that any such order has been made by the President applicable to the product here imported.

The Customs Court held, as we have noted, that the record established a foreign value. Foreign value is thus defined by said section 402 (b):

SEC. 402 (b). The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

It will be observed that this statutory language fixes the foreign value as the market value or price of the merchandise at which it or similar merchandise is freely offered for sale in the country of exportation. Some confusion has arisen in this case because of the varying views of counsel as to what constitutes the "merchandise" of importation. The said merchandise does not at all consist of certain amounts of dutiable cloth, or rags, but of completely manufactured articles, namely, samples and booklets of samples. Where similar samples were involved in *Vandegrift & Co.* v. *United States*, 12 Ct. Cust. Appls. 230, T. D. 40231, we said:

The samples were manufactured for a definite purpose, and were fully dedicated to the use, at the time of importation, of aiding in the sale of merchandise of which they were representative.

The record in the case clearly establishes that the merchandise is not "waste," and that it is not used as "rags" and not dutiable as such.

Again we said, in *United States* v. *Milbank, Leaman & Co.*, 14 Ct. Cust. Appls. 166, T. D. 41693:

When these goods were imported, they had been manufactured for a definite purpose and were fully dedicated to the use, at the time of importation, of aiding in the sale of merchandise of which they were representative. *Vandegrift & Co.* v. *United States*, 12 Ct. Cust. Appls. 230 [237]. They were, therefore, advanced from the stage of raw materials and had become samples.

The first question presented is, therefore, Were these samples, or ones similar thereto, freely offered for sale in the country of exportation? The record shows that they were never offered for sale, either in the home market or for export, but were universally given away to the customers of exporters, either domestic or foreign. This is conceded by all parties. There could, therefore, be no foreign or export value, and the Customs Court erred in its finding in this respect. The fact that the samples might have had some value as rags, when exported, is immaterial. They were not rags, but samples, and no foreign or export value, as such, is established.

The record affirmatively shows that there is no United States value of the imported merchandise. To paraphrase the statute, section 402 (d), the United States value is the price at which such or similar merchandise is freely offered for sale in the principal market of the United States. It is shown that such samples are not offered for sale in the United States, but are given to customers there, without charge. No attempt is made to prove that similar articles are ever offered for sale in the United States. Hence, it is obvious that there is no United States value shown for these samples. It is argued that the price of the samples is included in the price charged for goods ordered by customers. There is, however, no evidence to this effect in the record, nor is there anything to show that any greater price is charged for the cloth ordered, because of the added samples. A United States value may not rest upon an hypothesis, but upon facts established in the record.

These various issues being resolved, one query remains: Does this record made up by the single appraising justice show sufficient facts from which the cost of production of the imported merchandise may be ascertained? Unless it does there would seem to be no basis for the single justice taking the cost of production as the dutiable value. The hearing before the single justice was *de novo*, and the dutiable value must appear, if at all, from the record there made. *Johnson*

*Co.* v. *United States,* 13 Ct. Cust. Appls. 373, T. D. 41318. *Happel & McAvoy* v. *United States,* 16 Ct. Cust. Appls. 161, T. D. 42791.

Cost of production is thus defined by the statute, section 402 (e):

SEC. 402 (e). For the purpose of this title the cost of production of imported merchandise shall be the sum of—

(1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2) The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;

(3) The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

The examiner testified that the basis of his appraisement was "the cost of production as stated on the invoices. It included the cost of the cloth, two pieces of cardboard covered with cotton and lettered on one of the Heather Mills and a cord for convenience sake in hanging them up in the stores." On examination of the invoices, we find that in each case the cost of production found by the appraiser and approved by the reappraising justice is the purchase price or invoice value. The total dutiable value was obtained by computing the number of yards of cloth in the samples and multiplying this by the unit invoice price per yard.

We agree with the Customs Court that this is not a sufficient basis upon which to fix cost of production. The invoice price might, possibly, be the cost of production, but there is no certainty that this would be true. The invoice price, being the purchase price, might be higher or lower than the cost of production, owing to the nature of the contract of purchase or the state of the market. The statute above quoted requires the cost of production to be computed from several elements: First, the cost of materials and of fabrication; second, the usual general expenses, not less than 10 per centum; third, the cost of containers; fourth, an addition for profit, not less than 8 per centum. Were all of these elements considered in the appraisement by the single justice? Manifestly not, but rather the invoice prices were accepted as the cost of production.

In *Austin, Baldwin & Co.* v. *United States,* 7 Ct. Cust. Appls. 186, T. D. 36505, the inquiry was as to the cost of production of certain

imported phonograph disks, under paragraph L of section 3 of the Tariff Act of October 3, 1913, which said paragraph defined the cost of production in much the same language as that used in said section 402 (e). In speaking of the elements entering into such cost of production, the court said, *inter alia:*

We are decidedly of the opinion that paragraph L establishes a rule of appraisement designed to reasonably protect the Government from undervaluation and the importer from overvaluation, and that it was not the purpose of Congress to permit the appraising officer to fix values regardless of the facts. In other words, in figuring out the cost of production, the appraising officer must take into account the cost of fabrication, the cost of materials, and the general expenses in the amount which, using every available means in his power, he finds them actually to be, provided, however, that general expenses can in no event be calculated at less than 10 per centum of the total outlay.

In *Stirn* v. *United States*, 10 Ct. Cust. Appls. 17, T. D. 38257, also under said paragraph L, certain imported goods were appraised by the local appraiser, invoice value, plus 8 per centum added for manufacturer's profit. This court there said, in part:

The importer contends that the invoice value of the importations was the cost of their production inasmuch as that value included the cost of materials, the cost of all manufacturing processes to bring such materials to the condition of the imported merchandise, general expenses, amounting to more than 10 per centum of the cost of all manufacturing processes, the expense of preparing and putting up the merchandise ready for shipment, and a profit which was more than 8 per centum of the cost of all manufacturing processes, plus the expense of preparing the goods for shipment.

\*    \*    \*    \*    \*    \*    \*

*Actual* general expenses and *actual* profit may have been accounted for in the invoice values, but as the expense and profit so accounted for did not reach the minimum required by the statute, the invoice values did not represent the true cost of production as defined by the tariff act. *Austin, Baldwin & Co.* v. *United States*, 7 Ct. Cust. Appls. 186; T. D. 36505. We must hold, therefore, that the invoice value was less than the cost of production determined in accordance with the provisions of paragraph L.

We held, also, in *Turner & Co.* v. *United States*, 12 Ct. Cust. Appls. 48, T. D. 39997, that the selling price of an article was not the test as to whether it was the component material in chief value of an article made in part of it, but that whether it was or was not such component material of chief value depended upon its cost of construction, which cost was not to be confused with selling price.

We conclude, therefore, that the record made by the reappraising justice contains no substantial evidence in support of either foreign value, export value, United States value, or cost of production. In other words, at the conclusion of the hearing before Associate Justice Weller, he had no evidence before him upon which he might appraise the dutiable value of the imported goods. The reappraisement made by the single justice must be based upon such evidence as is intro-

duced by the parties at the hearing. *United States* v. *McConnaughey & Co.*, 13 Ct. Cust. Appls. 112 [118], T. D. 40944. It was equivalent to a situation where, an appeal having been prayed, the appellant fails to prosecute, or abandons his appeal. Under such circumstances the single justice might well have dismissed the appeal, upon the motion of either party or upon his own motion. In such event the case would have stood as if no appeal had been taken and the appraisement made by the local appraiser would again have become vital and effective. A party may not appeal for a reappraisement and thereafter abandon or fail to prosecute his appeal and thereby defeat the appraisement. He is the moving party and must prosecute his appeal. It is true that after such appeal is prayed and some substantial evidence is before the reappraising justice, further consideration of the appraisement made by the local appraiser is eliminated. Until that happens, however, this appraisement is simply suspended and subject to reinstatement upon the dismissal of the appeal by the reappraising justice.

While the appraisement made by the local appraiser is not, strictly speaking, a judgment, but rather a determination, yet, in view of the provisions of law permitting an appeal from it to a judicial body, and a trial de novo, it bears close analogy to the judgments of inferior courts from which appeals are permitted by law to superior courts for trials de novo. It is the well-understood rule in the Federal courts that upon appeal to an appellate court, whether for a trial de novo or a review, when such appeal is dismissed the judgment of the lower court again has full vitality. *Maxwell* v. *Williams*, Fed. Cas. No. 9324 a; *Stewart* v. *Oneal*, 237 Fed. 897; *Newman v. Moyers*, 253 U. S. 182. See also *Carey & Skinner* v. *United States*, 16 Ct. Cust. Appls. 382, T. D. 43118, decided concurrently herewith.

In view of the condition of this record and to the end that the parties may again present their cases in the light of the suggestions herein made by us, the judgment of the court below is *reversed* and the cause is *remanded*, with directions to *remand* the same to the single justice for a new trial.