UNITED STATES *v.* F. B. VANDEGRIFT & Co. (No. 3378)[1]

F. B. VANDEGRIFT & Co. (G. W. BERNSTEIN & SONS) *v.* UNITED STATES (No. 3381)

[1] T. D. 44613.

United States Court of Customs and Patent Appeals, January 28, 1931

*Charles D. Lawrence*, Assistant Attorney General (*Peter A. Abeles*, special attorney, of counsel), for the United States.

*Comstock & Washburn* (*J. Stuart·Tompkins* of counsel) for Vandegrift et al.

[Oral argument December 12, 1930, by Mr. Lawrence and Mr. Tompkins]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

BLAND, Judge, delivered the opinion of the court:

As this case comes to us it is an appeal by the Government and a cross appeal by F. B. Vandegrift & Co. from a judgment of the United States Customs Court, First Division, reversing a judgment of dismissal by Judge Weller. The first six entries, herewith included, listed in Schedule A, and two other entries not included in this appeal, were originally tried before Judge Weller, as the single appraising judge, in May, 1926. Appeal was taken from his decision, which affirmed the values found by the appraiser, and the United States Customs Court reversed his judgment and held that the record established a foreign value (the rag value), which was a lower value than the appraised value. From this judgment the Government appealed to this court, and in *United States* v. *F. B. Vandegrift & Co. et al.*, 16 Ct. Cust. Appls. 398, T. D. 43120, the judgment of the lower court was reversed and the cause remanded to the single appraising judge for a new trial.

When the cause came up for trial under the remand, eight additional reappraisements were consolidated and tried with the remanded cases. Again Judge Weller concluded that there was no evidence of foreign value, export value, cost of production, United States value, or American selling price, of the merchandise under consideration or of similar merchandise, and dismissed the appeals. The importers appealed from the judgment of dismissal to the United States Customs Court which reversed the judgment of dismissal of the single appraising judge and held that the merchandise had no commercial value and, for that reason, had no dutiable value upon which duty might be assessed, and from this judgment the Government has appealed.

The merchandise in all the appeals is the same and consists of so-called books of samples of woolen cloth about six inches long by five inches wide, cut from the bolt and fastened together at the top by cardboard slips with cords through the center of the slips. There is no dispute about the facts in the case. The samples were sent from Great Britain to the United States to be used by certain merchants for merchant-tailor purposes in ordering the cloth in the bolt

to be used in making men's suits. It is conceded that the samples themselves cannot be used for the purposes for which the cloth from which they were cut is used, and that they are not of the size or character as would fit them for making caps or for other manufacturing purposes for which the cloth from which they were cut was suitable.

In the trial before the single appraising judge, in the appraisements involved in the *Vandegrift* case, *supra*, no evidence was introduced by anyone on appeal to reappraisement showing foreign value, export value, United States value, or cost of production. This court held as follows:

The first question presented is, therefore, Were these samples, or ones similar thereto, freely offered for sale in the country of exportation? The record shows that they were never offered for sale, either in the home market or for export, but were universally given away to the customers of exporters, either domestic or foreign.

This is conceded by all parties. There could, therefore, be no foreign or export value, and the Customs Court erred in its finding in this respect. The fact that the samples might have had some value as rags, when exported, is immaterial. * * *

\* \* \* \* \* \* \*

We conclude, therefore, that the record made by the reappraising justice contains no substantial evidence in support of either foreign value, export value, United States value, or cost of production. In other words, at the conclusion of the hearing before Associate Justice Weller, he had no evidence before him upon which he might appraise the dutiable value of the imported goods. The reappraisement made by the single justice must be based upon such evidence as is introduced by the parties at the hearing. *United States* v. *McConnaughey & Co.*, 13 Ct. Cust. Appls. 112 [118], T. D. 40944. It was equivalent to a situation where, an appeal having been prayed, the appellant fails to prosecute, or abandons his appeal. Under such circumstances the single justice might well have dismissed the appeal, upon the motion of either party or upon his own motion. In such event the case would have stood as if no appeal had been taken and the appraisement made by the local appraiser would again have become vital and effective. A party may not appeal for a reappraisement and thereafter abandon or fail to prosecute his appeal and thereby defeat the appraisement. He is the moving party and must prosecute his appeal. It is true that after such appeal is prayed and some substantial evidence is before the reappraising justice, further consideration of the appraisement made by the local appraiser is eliminated. Until that happens, however, this appraisement is simply suspended and subject to reinstatement upon the dismissal of the appeal by the reappraising justice.

\* \* \* \* \* \* \*

In view of the condition of this record and to the end that the parties may again present their cases in the light of the suggestions herein made by us, the judgment of the court below is reversed and the cause is remanded, with directions to remand the same to the single justice for a new trial.

At the retrial of the case, after remand, the appellee herein (appellant in the cross appeal) attempted to prove a foreign or home market value of the merchandise in Great Britain and showed, over the objection of the Government, that merchandise of the same

character as the instant importation was distributed free of charge to merchants in Great Britain in connection with the sale of cloth for making men's clothing, and that after about one year from the time the samples were produced, and after they had become "obsolete" and of no further use as samples of the goods which were for sale, the left-over samples were sold, in considerable quantities, at a certain low figure, to rag merchants, as tailors' clippings to be manufactured into shoddy. This value is characterized as the "rag value" of the merchandise at bar, which value the importer contends is the foreign value of the importation and should be accepted as the dutiable value for tariff purposes, if this court is of the opinion that the merchandise has a dutiable value.

The court below in the case at bar did not approve this rag-value contention of the importer, but reversed the judgment of dismissal of the single appraising judge upon the ground that the goods, having no commercial value, had no dutiable value.

The evidence introduced in this case by the importer, as above indicated, is not sufficient from which to determine either the foreign value, the export value, the United States value, the cost of production, or the American selling price of the goods. It seems to us to be clear that samples which might be very valuable when in season and not obsolete might have an entirely different and lower value after they had served their purpose, or after the time had passed for them to serve such purpose and that any value predicated upon their rag value has little, if any, relation to their value as samples. The only thing the evidence does show that might have any bearing is that the merchandise had a value in Great Britain after it became obsolete, and it is fair to assume that it has a similar value in this country after it becomes obsolete. It would seem to follow, unquestionably, that if it had a rag value when obsolete, it would have a rag value before becoming obsolete.

The result of the decision of the court below is that the importer is permitted to import merchandise, which evidently has a rag value in this country, without paying any duty whatever on the same. In the face of this fact, it can not be said with any plausibility that the merchandise at bar has no commercial value. The mere fact that it was given away does not justify the conclusion that it was valueless. Certain articles of artistic and educational value are expressly made free of duty, if given away in a prescribed manner, but this generosity on the part of Congress is not predicated upon the premise that the goods are valueless.

It has been argued here and in the court below that long-continued administrative practice in permitting samples of this character to come in free should be controlling. The subject of free samples has been a fertile source of litigation for many years, and in view of section 308

of the Tariff Act of 1922 and Section IV, paragraph J, subsection 4, of the act of 1913, we conclude that the question should be set at rest. In the act of 1913, substantially the same provision now found in section 308 of the Tariff Act of 1922 was enacted for the first time. The provisions make free of duty "samples solely for use in taking orders for merchandise" if the same are exported within six months. If not exported, the importer must pay duty. If the samples are without value, how could the amount of duty be established? If Congress intended merchandise like that at bar to be admitted free of duty, irrespective of subsequent exportation of the same, it could easily have said so.

Furthermore, a consideration of the express language used in section 1 of Title I, and in the free list, Title II, section 201, and paragraphs 1459 and 1460, and other general or catchall provisions contained in the tariff act, warrants a conclusion directly opposed to the views of the court below that such merchandise as is at bar should, for tariff purposes, be regarded as not falling within any of the dutiable or free provisions as merchandise.

It is claimed that the appraiser appraised the goods on their cloth value, that is, upon the value of the cloth before it was cut. It is not suggested that anything was added for the further manufacturing effort put upon it. It would seem to us, under this record, that the proper value for the appraiser to have found, in the absence of the existence of any other value, was the cost of production. The appraiser appraised the goods as was his right and duty. If the Government or the importer was dissatisfied with this value, they had the right to appeal to reappraisement and introduce evidence of a different statutory value. Their failure to do so leaves in effect the appraisement made by the local appraiser. *United States* v. *Vandegrift & Co., supra.*

At the conclusion of the trial Judge Weller found that there was no substantial evidence introduced of any value from which he could determine foreign value, export value, United States value, cost of production, or American selling price, and, upon motion of the Government, properly dismissed the appeals to reappraisement.

In the Government's brief it has casually referred to the entries in this case as being "so-called duress entries." Their duress character has not been here pointed out, and no question involving the effect of the entries being of that character is presented to us or is decided herein.

The judgment of the United States Customs Court reversing the judgment of dismissal of the appeals by the single appraising judge is *reversed.*