TRANSATLANTIC SHIPPING CO., INC. (ABSORBO BEER PAD CO., INC.) *v.*
UNITED STATES

No. 4380.—Invoices dated Glashutte, Germany, June 10, 1936, etc.
Certified June 12, 1936, etc.

Entered at New York July 3, 1936, etc.
Entry No. 700495, etc.

(Decided August 31, 1938)

*James W. Bevans* for the plaintiff.
*Charles D. Lawrence*, Acting Assistant Attorney General (*Dorothy C. Bennett*, special attorney), for the defendant.

KINCHELOE, Judge: These appeals to reappraisement involve the dutiable value of merchandise which consists of wood pulpboard known as quality "L," imported from Germany during the period from November 1935 to March 1937 and entered at the port of New York. There are 25 appeals to reappraisement involved in this action and, by consent of the attorneys for the plaintiff and the defendant, they were consolidated for trial. The plaintiff contends that the proper dutiable value of the merchandise is export value and the defendant claims that the proper dutiable value of said merchandise is foreign value, as appraised.

The evidence for the plaintiff in this case consists of the testimony of Benjamin B. Goldstein, president of the plaintiff firm, and Exhibit 1, which is an affidavit executed by Paul Franke, general manager of the exporter. The evidence for the defendant consists of Exhibit 2, which is a special agent's report of date, November 25, 1936, executed by Walter M. Wolff.

The said Benjamin B. Goldstein testified in substance that he is the president of the plaintiff and has been since August 1933; that he ordered all of the instant merchandise and saw it when it came into plaintiff's place of business; that the plaintiff has no connection with the foreign shipper; that it has no contract with the foreign shipper by which the plaintiff is an exclusive buyer of this character of merchandise in the United States; that the prices shown on the invoices were the prices the plaintiff actually paid for this merchandise; that

the grade of wood pulpboard covered by these importations is what is known as quality "L"; that he communicated with the foreign manufacturer in an effort to receive information concerning sales of this merchandise abroad after the controversy arose between the plaintiff and the defendant; and that he received a sworn statement of the said Paul Franke, general manager of the manufacturer, as to the conditions of sales or business abroad in this character of merchandise. This is the affidavit that was filed as Exhibit 1 in this case.

On cross-examination by the attorney for the defendant the said witness stated in substance that he did not know the difference between the qualities of this merchandise except that he ordered quality "L" and that it was billed and shipped quality "L"; that he got the information about the different qualities from said Paul Franke; that he got information concerning sales of this merchandise abroad from the exporter the early part of 1937, and after the dates of these importations; that he arrived at the price plaintiff was to pay for this merchandise by agreement with the exporter; that the exporter was to sell plaintiff 400 tons of wood pulpboard at the price of $5.20 per hundred kilograms; that this agreement was by correspondence; that the exporter had no pricelist; that he had no offers for sale from other manufacturers of such or similar merchandise in Germany; that the quantities in which it was offered for sale usually depended on the request of the importer and that it is all done by bargain and sale; and that the plaintiff buys from 60 to 70 per centum more of such or similar merchandise than any of its competitors.

In Exhibit 1 the said Paul Franke stated in substance that he is the general manager of the exporter; that he has held this position with said exporter during 1935, 1936, and 1937; that he is thoroughly familiar with the wood pulpboard manufactured by said company and with the entire activities of the company, including its export business; that the said exporter is a manufacturer of articles including beer mats or pads, in which wood pulpboard is used, and produces wood pulpboard for its own use and for export but does not manufacture wood pulpboard for sale in Germany, and does not freely offer any wood pulpboard produced by it for sale in that country; that the wood pulpboard of quality "L" is not manufactured and sold in Germany, within his knowledge, by any other manufacturer, and that manufacturers in Germany of beer mats produce wood pulpboard for their own needs only; that the wood pulpboard of quality "L," manufactured by his company, was not sold in Germany but was sold during the years 1935, 1936, and 1937 for export to Belgium; that one sale of wood pulpboard was made in Germany in 1936 to a competitor in the manufacture and sale of beer mats, whose plant had become disabled as a result of an electric storm, and that the price asked was not a competitive price but was fixed by reason of the conditions

presented, namely, that a competitor in the manufacture and sale of beer mats was unable to produce his own raw material; that the sale of the wood pulpboard to said competitor was not the quality of the merchandise shipped to the United States and involved in these instant importations; that said exporter has not entered into any agreement limiting its exportations of said wood pulpboard quality "L" solely to the plaintiff or to any other individual, firm, or company in the United States, but that said exporter *is willing* to sell the same to anyone who wants to buy at the same price as that charged to the said plaintiff.

The special agent in his report marked Exhibit 2, on page 4, stated that, according to the statement made to him by the said Paul Franke, wood pulp or pulpboard for beer mats is sold only to a few firms, virtually all of whom are consumers; that Franke's said company had three customers in the United States for such or similar merchandise during 1935 and 1936, two in other foreign countries, and one buyer in the German home market. However, this report does not give the names of said customers in the United States, the quantities said customers purchased, the prices they paid for same, or the conditions of said sales, and mentions the sale to the manufacturer of beer pads in Germany whose plant was struck by lightning, evidently the same sale mentioned by said Paul Franke in Exhibit 1. This is the gist of the testimony in this case.

It must be borne in mind that it is the contention of the plaintiff in this case that the correct dutiable value of the instant merchandise is the export value. It further contends that there is no foreign value of the instant merchandise by reason of the fact that there were no sales of same made in Germany, except the one made to a competitor in the manufacture of beer pads in Germany mentioned in the evidence and which plaintiff claims does not establish a sale in the ordinary course of trade in Germany, and that what sales were made for export to other countries, if any, plaintiff contends were sold at a price that would establish a foreign value lower than the export value. From a careful reading of this scant record, I am of the opinion that export value may be the true basis for appraisal purpose of the instant merchandise and perhaps there is no foreign value as high as the export value for same, but on this evidence I cannot hold that the plaintiff has overcome the presumption of correctness attaching to the action of the appraiser in the appraisement of the instant merchandise.

The definition of export value, so far as it is pertinent to this case, is defined in the Tariff Act of 1930 as follows:

[SEC. 402.] (d) EXPORT VALUE.—The export value of imported merchandise shall be the market *value* or the *price*, at *the time of exportation* of such merchandise to the United States, at which *such* or *similar* merchandise is *freely offered*

*for sale to all purchasers* in the principal markets of the country from which exported, in the usual *wholesale quantities and in the ordinary course of trade,* for exportation to the United States \* \* \*. [Italics mine.]

It will be seen from a careful reading of the above definition of export value that there are several requirements that are incumbent upon the plaintiff to establish export value and to overcome the presumption of correctness attaching to the action of the appraiser in appraising merchandise. These requirements have been stated in many opinions by our appellate court. Perhaps one of the clearest opinions on this point so far decided is the case of *United States* v. *Downing*, 20 C. C. P. A. 251, T. D. 46057. The court in this opinion stated in part as follows:

We have had frequent occasion to endeavor to point out just what is required and upon whom the duty of proof primarily rests in appeals to reappraisement. \* \* \* We shall not here restate the principles of law and practice there outlined.

It is sufficient here to bear in mind that the importer having appealed, it was incumbent upon it to show (1) the foreign value and (2) the export value, to the end that the higher might be taken as the dutiable value, or to show (1) a foreign value and the nonexistence of an export value, or (2) an export value and the nonexistence of a foreign value. Being the appealing party, it was incumbent upon it "to meet every material issue involved in the case." *Meadows, Wye & Co. (Inc.) et al.* v. *United States*, 17 C. C. P. A. (Customs) 36, 42, T. D. 43324.

This is true although, as stated in the *Meadows, Wye & Co.* case, *supra*, no presumption of correctness attends the appraisement of the local appraiser and the proceeding before the single judge is a trial *de novo*, and if importer failed therein then its appeal was subject to dismissal by the trial court, in which event the value fixed by the local appraiser would have remained in full force and effect. *United States* v. *F. B. Vandegrift & Co. et al.*, 16 Ct. Cust. Appls. 398, T. D. 43120.

This case was decided under the Tariff Act of 1922, which act did not provide any presumption of correctness should attach to the action of the appraiser in appraising merchandise, but under section 501 of the Tariff Act of 1930, which was in operation at the time of the importation of the instant merchandise, it specifically provides that the value found by the appraiser is presumptively correct.

I am unable to find sufficient evidence in this record to prove that the market value or price at the time of the exportation of the instant merchandise to the United States, at which such or similar merchandise was freely offered for sale to all purchasers in the principal markets of Germany, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, was the price or value claimed by the plaintiff in this case.

Without giving a further résumé of the testimony in this case, I am decidedly of the opinion that it is not sufficient to overcome the presumption of correctness attaching to the action of the appraiser in the appraisement of all the instant merchandise. All of said appeals are therefore dismissed.

Judgment will be rendered accordingly.