MITSUBISHI SHOJI KAISHA, LTD. *v.* UNITED STATES

**No. 4570.**—Invoice dated Nagasaki, Japan, January 27, 1936.
Certified February 3, 1936.
Entered at Seattle, Wash., February 25, 1936.
Entry No. 3963.

### First Division, Appellate Term

(Decided May 10, 1939)

*Lawrence & Tuttle (George R. Tuttle* of counsel) for the appellant.
*Webster J. Oliver*, Assistant Attorney General (*Richard F. Weeks*, special attorney), for the appellee.

Before SULLIVAN, BROWN, and KEEFE, Judges; KEEFE, J., concurring; SULLIVAN, J., dissenting

BROWN, Judge: This case was brought at Seattle, Wash., and tried partly there and completed in San Francisco and Los Angeles before a single judge of this court on circuit duty on the Pacific coast.

The local appraiser had appraised the rubber-soled shoes involved at the American selling price of an American shoe which he claimed to be comparable, President Hoover having advanced the statutory amount of duty by changing the method of valuation to the American selling price of a comparable American article defined in section 402 (g) of the Tariff Act of 1930, from the previously existing foreign value, 63 Treas. Dec. 234.

The importer appealed to reappraisement and the contest, which was vigorously fought on a long record, turned principally upon whether or not a comparable American article existed. The single judge hearing the appeal decided it did not exist and sustained the importer's contention in that regard, holding the appraisement of the local appraiser illegal because of that fact. He nevertheless dismissed the appeal to reappraisement for what he considered a failure to prove foreign and export value, thus in legal effect applying the illegal American selling price as the dutiable value.

From his decision an appeal was taken by the importer to this division.

After a careful analytical study of the record we agree with the part of the decision of the judge below which holds that there is no comparable American article and that, therefore, appraisement cannot be had on the American selling price for that reason. However, with his judgment dismissing the appeal to reappraisement we are unable to agree.

The effect of affirming the decision below would be that, although two courts have held the appraised value on the American selling price of a comparable American article is illegal because there is no such comparable article, the importer must, nevertheless, pay duty upon such illegal value.

The court below held (and this court on appeal agrees) that it was illegal to value these shoes upon the value of a comparable American shoe (as proclaimed by the President) because there existed no comparable American shoe upon which to appraise it. That is not a holding that the *amount* of the local appraiser's finding was erroneous, but that the appraisal was illegal and void. No statutory presumption then attaches to it. It is the same as if it were not there. Presumptions from nothing do not presume very far. We do not live with Alice in Wonderland.

Yet if the court below was right in dismissing the appeal before him the legal effect is that the importer must pay upon such illegal value nevertheless. That is a rough and unjust result which could easily be avoided by this court by remanding this case for the taking of new evidence of foreign or export value on retrial below. There is no difficulty in doing that in the interest of justice. After the decision below the importer moved for retrial to take further proof of foreign and export value. This was denied by the trial judge.

Now, what is the evidence which the court below holds did not justify his finding a value, so that he dismissed the appeal and by so doing applied the appraiser's value which he had just held illegal?

Witness HOSHIDE [R. p. 16]:

Q. Mr. Hoshide, do you know the landed cost of merchandise such as Exhibit 1 to your company?—A. Yes.

Q. And are you able to estimate from that landed cost what the wholesale selling price would be in the United States in February of 1936 if the merchandise were dutiable at the foreign or export value?  *  *  *—A. Yes.

Q. And would you state what that value is? (Objection to qualifications sustained.)

Q. What are the nature of your duties in reference to the selling of your merchandise?—A. I must arrive at the selling price through a process of calculation from the price obtained from the manufacturer.

Q. And just tell us how you do that.—A. Well, your price from the manufacturer in the yen must be exchanged into United States currency at approximately the current rate of exchange, and using the foreign value, if in case the foreign value is the dutiable value, as a basis for estimating the duty, then adding the

charges for customs brokerage bond, wharfage and handling, and other miscellaneous items which may come in, the sum total of which divided by the number of pairs of shoes will give you the average selling price per pair.

Q. And do you do that regularly with the merchandise which you import?—A. Yes.

Q. Is that a part of your regular duties with the company?—A. Yes, sir.

Q. Now would you state what your selling price would be on these particular shoes in February of 1936 if you were paying duty at the foreign or export value? (Objection and argument without a ruling. Question apparently withdrawn.)

Q. Mr. Hoshide, have your entries of shoes such as Exhibit 1 been appraised at Seattle with a finding of the existence or nonexistence of dumping duties; do you know?—A. Yes.

Q. And do you know whether in making such an appraisal the appraiser determined the foreign value of the commodities?—A. Yes, he did.

Q. And in this particular instance do you know whether there was or was not any finding of dumping?—A. There was no finding of dumping.

Q. Do you, therefore, know whether or not your invoice value represents the foreign-market value?—A. I do.

Q. Now, basing your calculation upon your invoice value, would you state what the selling price per pair of the shoes covered by this invoice would be if they were dutiable at the foreign value?

After objection and argument Judge Cline ruled as follows:

Judge CLINE. They are bound by the Presidential Proclamation, but counsel here is contending that the appraisement at the American selling price was illegal, these should have been appraised at the foreign or export value. Now he is trying to show just exactly what the wholesale price would have been at the foreign value on the date of shipment. I think that is admissible in an action of this kind.

Q. Would you state what those values are?—A. Between 30 and 40 cents United States money, ex dock, Seattle.

Q. 30 or 40 cents per pair?—A. Per pair.

Q. And that would be your wholesale market value in the United States during February of 1936?—A. Yes.

Judge CLINE. That is the price at which you would have offered them for sale?—A. Yes.

\*    \*    \*    \*    \*    \*    \*

By Mr. McDERMOTT [R. p. 22]:

X Q. You are affiliated with the importer?—A. Yes, I work for the importer.

X Q. The importing concern here is an affiliate of the exporting concern, isn't it?—A. No.

X Q. Is the importing concern a corporation?—A. It is.

X Q. Is the exporting concern a corporation?—A. It is.

X Q. Do they have the same Board of Directors, do you know?—A. I know. They do not.

X Q. Are there any officers of the importing concern who are also officers of the exporting concern?—A. There are not.

X Q. Could you please describe the relationship between the importer and the exporter? (After objection overruled and restated.)—A. We as the importer have the sole export sales rights for the manufacturer.

\*    \*    \*    \*    \*    \*    \*

Mr. McDERMOTT [R. p. 29]:

R. X Q. On or about February 18, 1936, did you know the prices at which merchandise like Exhibit 1 was offered in the usual wholesale quantities in the country of exportation in the ordinary course of trade?—A. Yes.

R. X Q. You did?—A. Yes.

R. X Q. How did you ascertain that knowledge?—A. From a communication with the manufacturer.

R. X Q. So your basis of your knowledge is by written documents from the manufacturers?—A. And also from our own office in Japan.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

By Mr. TUTTLE:

R. Q. Mr. Hoshide, you were just asked if you knew the foreign-market value on the date of exportation. Please state what that value was.—A. The value was in yen 80 cents or 85 sen per pair c. i. f. Seattle. ·

R. Q. Did that include the cost of all cases and packing and local freight as well as the ocean freight?—A. Yes, it did.

R. Q. Would you state what the value was in Japan packed ready for shipment to the United States? (After objection overruled.)—A. 70 sen per pair.

By Mr. McDERMOTT:

R. X Q. Was the price you paid for the merchandise described on the invoice covered by this appeal to reappraisement equal to the foreign-market value at the date of exportation?—A. Yes.

Here it should be noted that the price stated in the invoice is 70 sen.

Mr. Birks, the examiner who made this contested appraisement, also approved an antidumping report attached to the invoice which shows no dumping and reads as follows:

Appraisement report under Anti-Dumping Act: Foreign market value on date of export less than exporter's sales price.

That certainly indicates that the customs office in Seattle, including this experienced examiner, knew something about the foreign value and the export value of this merchandise at the time of shipment. His ordinary duties as an experienced and skillful examiner would imply that anyway, particularly as the statute enjoins the appraiser in section 500:

(3) To ascertain whether the merchandise has been truly and correctly invoiced.

This applies to all merchandise including that assessed on the value of a comparable American article.

His making of the check mark in red ink together with his approval, also noted in red ink under "Remarks" in the summary, also show he found nothing at fault with the invoice value of 70 sen per pair.

All this, which would be presumptively so anyway, indicates that Mr. Birks was qualified to testify as to the foreign-market value.

He testified as follows:

Mr. TUTTLE [R. p. 34]:

Q. Mr. Birks, do you know what the foreign or export value was in February of 1936 in Japan for merchandise similar to this?—A. I know approximately what it was.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

Q. Mr. Birks, would you state what the foreign or export value was on the date of exportation of this merchandise?

Judge CLINE. If you know.

—A. As near as I could determine the value was 68 sen per pair packed.

Judge CLINE. The foreign value?

The WITNESS. Foreign value.

Q. That is higher than the export value, or there was no export value?—A. That was less than the invoiced value.

Q. No; I am asking you now——you know there are two provisions, one for export and one for foreign, whichever is the higher. 68 sen you stated the foreign value. Now, was that higher than the export value, Mr. Birks?

     *       *       *       *       *       *       *

Q. Mr. Birks, if this merchandise were not dutiable under Presidential Proclamation at American selling price would you have appraised it at 68 sen per pair?—A. From what information I had at the time I would have appraised them at 68 sen per pair packed.

This last answer shows that he did not think the invoice price of 70 sen denoted a higher export value. On the contrary it asserts that the examiner considered there was no higher export value than 68 sen.

[R. p. 46.]

Q. What is the usual wholesale quantity of the merchandise like Exhibit 2?—A. 144 pairs.

The above evidence ought to be plainly sufficient to justify a finding by this court of a dutiable value of 70 sen per pair. It is the opinion of the signer of this opinion that it does. But unfortunately many consider the court of appeals decisions are to the contrary and the Government insists that it is not sufficient and demands, in brief and oral argument, that the ruling of the judge below dismissing the appeal for lack of evidence be affirmed, and opposes a remand for further evidence of foreign and export value, which would be the only reasonable, just, and fair procedure for this court now to take under the circumstances as they have developed.

When the case was decided by the judge below dismissing the appeal for lack of evidence the importer moved for a rehearing for the purpose of making further proof of foreign and export value. This motion the Government vigorously and successfully opposed. The judge below overruled said motion. Why is such an attitude taken? Why such refusal to take the obviously fair and reasonable course? It is true that the cases cited by the Government, where the Court of Customs and Patent Appeals have ordered dismissal of appeals in reappraisement in somewhat similar situations, would justify us if we followed them literally in the *legal act* of ordering this appeal dismissed, no matter what plain miscarriage of justice would result. Fortunately, however, they have also left us open to use the fair and just alternative of remanding the case for the taking of further evidence. In the *Woolworth* case, 22 C. C. P. A. 184, 191, T. D. 47126, Judge Garrett said with the approval of the whole court except Judge Hatfield, who did not participate:

The statute provides that the division of three judges "shall affirm, reverse, or modify the decision of the single judge or remand the case to the single judge for further proceedings." The authority thus given is very broad. Certainly the appellate division passes upon questions of both law and fact. We think it may appraise, that is, find the dutiable value, and that it is its duty so to do in all cases where the appraiser had the power to appraise the merchandise at the time the appraisement was made. If it regards the value found by the single judge as both legally and factually correct, it should affirm such value. If not regarded as correct, it should find what is the value, or, if the record be insufficient, in its opinion, to enable such finding, the case should be remanded to the single judge with directions to dismiss the appeal to reappraisement or for a new trial, *as the division may determine.* [Emphasis mine.]

That enables us to remand this case for retrial to promote the ends of justice.

Dismissing appeals to reappraisement for lack of evidence is a purely modern judicial invention. From the time this court was first created under the name of the Board of General Appraisers, in 1890, no appeals to reappraisement were dismissed for lack of evidence until the first ruling to that effect by the Court of Customs and Patent Appeals in *J. H. Cottman & Co.* v. *United States*, 20 C. C. P. A. 344, T. D. 46114, decided December 19, 1932.

That, of course, was after appeals to the Court of Customs Appeals upon questions of law only were permitted by section 501 of the Tariff Act of 1922.

Previous to that case this court always found a value on reappraisement appeal from whatever evidence there was before it, however meager, as the statute explicitly and expressly commands.

It was almost entirely a purely fact finding process, final and summary in character. The importer's protest against the legality of an appraisement or reappraisement was very limited in scope. It only covered matters which amounted to a jurisdictional defect. When successful it properly and rightly resulted in liquidation upon the entered value.

The present procedure is much more cumbersome and troublesome to apply, with long drawn-out value contests. It is much more difficult for business in foreign trade to adjust itself to it. As a rule the business man must be relatively certain of the customs value to be applied before he can safely make extensive importations. Pitfalls such as that developed here are a brake on such trade. There is nothing expressly stated in the statute which expressly authorizes the dismissal asked for by the Government. On the contrary, the statute expressly commands the finding of value. Dismissal, therefore, is an unreasonable implication.

Dismissal here legally results in an affirmance of the appraised value when it would be impossible for the court to find such appraised value was the correct dutiable value.

Business was better off under the expedition and certainty of the former system provided by the Tariff Act of 1913, than under the present system as now construed by the courts. Such construction should be abandoned. While it continues to prevail new trials should be granted as of course in situations such as that before us.

Previous to the act of 1922 nearly all appraisements were made on foreign-market value of which both export and home sales were direct evidence.

The act of 1922 instituted the protectionist device (never since repealed) to procure more duty (in addition to raising the rates of duty) by providing that the importer should pay duty upon the so-called "export value" evidenced by sales in the foreign market (or offers for sale) for export to the United States or upon so-called "foreign value" evidenced by sales, or offers to sell, in the foreign market place for home consumption, *whichever was higher.*

This separation to obtain more duty, however, was never intended to affect injuriously the judicial remedy by reappraisement or to increase the burden or difficulty of proving value on reappraisement appeal with the consequent diminution of the number of such appeals. Nor was it intended to cause an export sale to cease to be evidence of foreign-market value, which controlled in the absence of higher sales in the home market place for home consumption. An export sale is made in the home market place just as is a sale for home consumption. A seller in the wholesale foreign market place would not ordinarily care whether the purchaser from him shipped the goods to the United States or sold them to retail dealers in the home country. He would not ordinarily inquire their ultimate place of consumption provided he received his price. The separation into two definitions was only for the purposes of obtaining duty upon the highest possible value. It should be given no other effect. If it is now to be given the effect of destroying an export sale as evidence of foreign value, which evidence is controlling in the absence of sales for home consumption, it enormously increases the difficulty of reappraisement and hurts the effectiveness of the judicial review on questions of valuation.

This division of sales in the home market place into two definitions was certainly not intended to bring about, by indirection and circumlocution (through dismissal of the appeal), the use of the value of an American article for calculating duty, which we are simultaneously holding did not exist and, therefore, cannot be applied here. In finding dutiable value we could not find the value of a nonexistent article. Yet that would be the result of sustaining the order of dismissal of the court below.

When the expert Government examiner here testified that if the American selling price of a comparable American article was not to be applied he would have appraised this merchandise at 68 sen he thereby

asserted that in his expert opinion that was the foreign-market value with no higher export value. He likewise asserted that there was nothing unusual about the quantity here shipped. If he had not so considered he could not have made that statement. If the importer is not entitled to rely upon that statement (as I would suppose) he surely is entitled to make supplemental proof supporting it, rather than to lose his case by default the really contested issue of which, concerning the application of an American selling price of a comparable article, he has already won.

Along with that change the doctrine was evolved by the court of appeals that an importer in a contest over the legal application of one value (here the American selling price of a comparable article) must also prove other values impliedly not under contest, at the risk of having his appraisement appeal dismissed for lack of evidence after having won his main contest before the courts. This untoward result actually happened in *United States* v. *Gane & Ingram*, 24 C. C. P. A. 1, T. D. 42264; *United States* v. *Manahan Chemical Co., Inc.*, 24 C. C. P. A. 53, T. D. 48333; *United States* v. *Philipp Wirth*, 24 C. C. P. A. 188, T. D. 48654.

In these and similar cases the importer had to. pay duty upon a value, which the court he had appealed to held to be illegal, as a result of the dismissal of his appeal, an anomalous legal result. The same miscarriage of justice would happen here if we affirmed the dismissal of this reappraisement appeal by the judge below. Fortunately, such an untoward and unfair result may be easily avoided by remanding the case for retrial below. This will permit the importer to introduce further proof of foreign and export value and of the usual wholesale quantity. We therefore unhesitatingly adopt that course.

When two courses are open, one just and the other unjust, it does not add to the dignity of this court nor does it advance the course of justice or benefit the public, for whom this judicial review of administrative action was provided by Congress, to adopt the latter.

It is ordered that this case be and it is hereby remanded to the next Seattle docket for the taking of further evidence by either party, to be considered by the judge of this court assigned to duty in that circuit along with the evidence already taken herein, according to the usual practice of this court.

Judgment will issue accordingly.

### CONCURRING OPINION

KEEFE, Judge: The writer hereof was designated to sit as a member of the First Division for the purpose of hearing oral argument and participating in the decision of this application for review of the decision and judgment of the trial court dismissing the appeal to re-

appraisement herein. The case was well presented on oral argument and in written briefs. Ordinarily, in a like situation, I would ·be inclined to sign the opinion of the member of the court with whom I am in full accord or concur in the result without approving the language thereof. Here, however, I desire to express my view in reference to the situation before us.

I am in accord with the decision of the trial court holding that the imported shoes are not like or similar to the American-made shoe and that they do not enter into competition therewith, and that therefore appraisement cannot be made on the basis of the American selling price. I am also in accord with the lower court in holding that under the evidence it is not shown which foreign value should be applied to the merchandise, that is to say, whether the merchandise is dutiable upon the basis of the foreign value for home consumption or the foreign value for export to the United States. In fact, I am in doubt that there is an export value that may be legally applied to the merchandise such as we have before us here. It is also quite true, as stated by the trial court, that there is an absence of proof of the usual wholesale quantities of the merchandise, but I consider the requirement of such proof in the peculiar circumstances of this case to be wholly technical. However, I am unable to concur with the judgment dismissing the appeal to reappraisement and thereby, in effect, establishing a value which the trial court had declared to be wholly erroneous. Having held the value found by the appraiser to be based upon a shoe which is not competitive, and in my opinion, therefore erroneous, it would appear to me that the trial court would still be confronted with a case in which the merchandise was before it for appraisement and that the single judge cannot avoid his duty to find value by dismissing the appeal. If he is unable from the evidence before him to find a value that may be legally used as the basis of duty, he should redocket the case for further evidence.

The law is well established by decisions of this court and our appellate court as to the burden of proof necessary to establish the essential elements of value. Although I do not countenance the "piece-meal" trial of a lawsuit, nor carelessness upon the part of counsel in the presentation of their cases, I am of the opinion that in order to adhere to the statute in the finding of value, where the presumption of correctness of the appraiser's finding has been destroyed, it is our duty to exhaust all means to find value, even to restoring the case to the docket. Certainly had the trial court followed the action of the appraiser and found the value to be based upon the American selling price, we would have held such action reversible error. Are we now to re-establish that wrongful value by dismissal of the appeal? As I see it, when the basis upon which the value has been found by the appraiser has been established to be wholly erroneous, we still have the merchandise

before us on which no legal dutiable value has been found. In such a situation we cannot escape our duty under the statute by dismissing the appeal and leaving the legal value undetermined, particularly when by restoring the case to the docket it is apparent that such a value exists and may be found.

Ever since the pronouncement of the doctrine of dismissal by our appellate court in appeals to reappraisement before a single judge and upon review by appellate divisions, we are constantly confronted with motions to dismiss appeals. The evident purpose in making these motions to dismiss is to create the technical effect of affirming the value found by the appraiser.

As I view the statute, when an appeal to reappraisement is properly before a single judge, he is directed by section 501 to determine the value of the merchandise. That direction is mandatory. It is not changed by the provision of the same section placing the burden of proof upon the party challenging the correctness of the appraiser's finding of value, commonly known as the presumption of correctness. If the challenging party fails to overcome the presumption of correctness of the appraiser's finding, it is the duty of the trial court so to state and find that value. While the same effect is obtained by a dismissal of the appeal it is not a finding of value according to the statute.

Congress enacted a simple process designed to enable importers to establish a value upon which merchandise may be appraised. In order further to simplify the proceedings it relaxed the rules of evidence and provided for the admission in evidence of pricelists, catalogs, reports or depositions of consuls, customs agents, collectors, appraisers, assistant appraisers, examiners, and certified copies of official documents. Because of the simplified procedure to enable the court to find value, it would seem to me that a motion to dismiss should be entertained only upon grounds of lack of jurisdiction because of defects in appeals. In all other situations the trial court should either find a value from the evidence before it or uphold the value found by the appraiser upon the ground of the presumption of correctness attaching to his finding thereof.

The language of section 501 is clear and unambiguous. There the trial court is directed to determine the value of the merchandise. The appellate division is directed to affirm, reverse, or modify the decision of the single judge or remand the case to the single judge for further proceedings. I cannot believe that the appellate court in making general assertions that the appeals might well have been dismissed had in mind that such motions should be entertained by the lower courts under the conditions existing in the case now before us, or that their statements would be construed as applicable to reappraisements in such a manner that the statutory direction to find value under the

provisions of the Tariff Act of 1930 could be avoided by a dismissal of the appeal.

An examination of the cases so frequently cited as authority for the dismissal of appeals convinces me that the appellate court in none of these cases had a situation before it similar to that confronting us here. This troublesome question first appears in the case of *United States* v. *Vandegrift*, 16 Ct. Cust. Appls. 398, T. D. 43120. There, wool cloth samples were appraised upon the basis of the cost of production. The evidence established that there was neither a foreign, export nor United States value for such merchandise and it was further established that the appraiser, although having all the elements before him upon which the cost of production could be found, failed to find the cost of producing the samples. In its opinion the court stated as follows:

Under such circumstances the single justice might well have dismissed the appeal, upon the motion of either party or upon his own motion. In such event the case would have stood as if no appeal had been taken and the appraisement made by the local appraiser would again have become vital and effective.

Contrary to the foregoing statement, however, the court held that—

to the end that the parties may again present their cases in the light of the suggestions herein made by us, the judgment of the court below is reversed and the cause is remanded, with directions to remand the same to the single justice for a new trial.

Upon the remand the trial judge found that there was no evidence of foreign or export value, cost of production or United States value of the merchandise under consideration or of similar merchandise, and dismissed the appeals. The importers appealed therefrom to the appellate division which reversed the judgment of the lower court and held that the merchandise had no commercial value and, for that reason, had no dutiable value upon which duty might be assessed. From the division judgment the Government appealed. See *United States* v. *Vandegrift*, 18 C. C. P. A. 356, T. D. 44613. Upon appeal the court found that the evidence introduced by the importer was not sufficient from which to determine the foreign, export, or United States value, or the cost of production, and stated as follows:

It would seem to us, under this record, that the proper value for the appraiser to have found, in the absence of the existence of any other value, was the cost of production. The appraiser appraised the goods as was his right and duty. If the Government or the importer was dissatisfied with this value, they had the right to appeal to reappraisement and introduce evidence of a different statutory value. *Their failure to do so leaves in effect the appraisement made by the local appraiser.* [Italics not quoted.] *United States* v. *Vandegrift & Co., supra.*

The foregoing illustrates the difference between the *Vandegrift* case, *supra*, and the instant case before us. There the appraiser found the value of the goods, as was his right and duty, upon the basis of the

cost of production in the absence of any other statutory value. Ample opportunity was afforded the importers to establish not only that there was another statutory value but that the cost of production found by the appraiser was not correct. The importer failed to establish any other value and also failed to prove that the cost of production found by the appraiser did not represent the actual cost of production. Consequently, it left the value found by the appraiser, to wit, the so-called cost of production, as the only lawful value before the court. The appraiser therefore rightfully was determining the legal value for that class of merchandise. If he erred in the price thereof, it must stand unless disproved. In the case now before us the appraiser found the American selling price of a competitive article under the provisions of section 336 upon which to base the duty applicable to the imported merchandise. The court finding that there was no competitive article clearly shows that the appraised value upon such a basis is wholly erroneous and the merchandise is in the same position as though it never had been appraised. Under the law the court may not remand the case to the appraiser for a proper appraisement, but is required to find a value that may be used as the basis of duty. In the one case a legal appraisement had been made, although it might have been incorrect because of the failure of the appraiser to use the proper statutory method in finding the cost of production. In the instant case the appraiser erred in using an article that was not competitive nor similar to the imported article in fixing the American selling price, and also erred in adopting the price of such article as the value of the imported merchandise.

The *Vandegrift* decision was followed by other decisions of our appellate court, to wit: *Johnson* v. *United States*, 17 C. C. P. A. 107, T. D. 43432; *Meadows* v. *United States*, 17 C. C. P. A. 36, T. D. 43324; *United States* v. *Malhame*, 19 C. C. P. A. 164, T. D. 45276; *United States* v. *Downing*, 20 C. C. P. A. 251, T. D. 46057; and *Merck* v. *United States*, 20 C. C. P. A. 413, T. D. 46249, in all of which the subject of dismissal of appeals to reappraisement was discussed. In almost all of the cited cases, however, the real question before the court was the burden of proof or the importer's failure to establish not only that the value found by the appraiser was incorrect, but that the value claimed was the value of the merchandise. Even where the court expresses the opinion that the trial court might well have dismissed the appeals, I note that the appellate court in nearly every one of these cases, for one reason or another, remanded the cases to be remanded to the trial court for a new trial to determine the value of the merchandise.

In the case of *United States* v. *Woolworth*, 22 C. C. P. A. 184, T. D. 47126, arising under the Tariff Act of 1930, the court had before it a situation where the appraiser had illegally appraised packing charges

and added the value thereof to the *per se* value of the merchandise to equal the dutiable value thereof. An appellate division of this court had declared the appraisement illegal and void and dismissed the appeals. Confronted with a situation where the appraiser had made an appraisement which the appellate division of this court had declared to be null and void and where the appeals to reappraisement had been dismissed, notwithstanding the finding of an erroneous appraisement, such as is before us here, the appellate court laid down the procedure to be followed by the trial court in determining the value of merchandise coming before it on reappraisement in the following language:

Under the circumstances of this case, should the single judge, after finding the appraisement erroneous or illegal, have proceeded, as he did proceed, to find dutiable value? If not, what should he have done?

It seems to have been the view of the appellate division in this case that instead of finding the dutiable value the single judge should, on the ground of the appraisement being invalid, have dismissed the appeal—at least that is what the appellate division itself appears to have done. Is this the correct procedure?

The routine provided by the statute as to appeals in reappraisement proceedings is that, when the appraisement of the local appraiser is questioned by either the Collector of Customs or the importer, an appeal is taken, which appeal is transmitted to the United States Customs Court, together with the entry and accompanying papers. The appeal is then assigned, in the language of the statute, "to one of the judges, who shall, after affording the parties an opportunity to be heard, *determine the value of the merchandise.*"

Surely the quoted language is clear and virtually interprets itself.

Before this one judge, or as we have been accustomed to express it, before the single judge sitting in reappraisement, various kinds of evidence may be admitted upon questions of fact, and after argument if same be desired by any of the interested parties, the judge is required to "render his decision in writing together with a statement of the reasons therefor and of the facts on which the decision is based."

His "decision" upon what?

One specific thing which the statute says he *shall* do, in such proceedings, is "*determine the value of the merchandise.*"

Under the Tariff Act of 1930 the value which the local appraiser found is made presumptively. correct, but this presumption, like all other legal presumptions, is just that and nothing more. *If the appraisement be defective for a purely legal reason, or if the evidence shows errors of fact, or if there be errors of both law and fact, obviously it is the duty of the single judge so to declare. But this is only a part of the requirement of the statute. Appraisement lies at the very basis of customs administration, and surely it is the clear intent of Congress that an appraisement shall be had as speedily and with as little difficulty as may be possible.*

Nothing practical is accomplished by simply upsetting the valuation of the local appraiser and stopping there. Certainly every intendment of the statute is to avoid any such *impasse. Hence the requirement that the single judge shall determine value. As we view it, that is the fundamental object of the jurisdiction conferred by the statute.*

\* \* \*, *The single judge simply proceeds to find value, and it is his decision which becomes the basis of all subsequent proceedings.* [Italics not quoted.]

The appellate court also commented specifically upon the authority of this court to find the value of the merchandise when "all the elements of appraisement" were present, stating that:

We think that no case, in which appraisement is required and in which the elements are present that enable appraisement, should be left suspended in mid-air to the detriment, if not the complete paralysis, of administration.

The court further clarified the term "elements of appraisement" by citing concrete examples of the appraisement of vessels, and the appraisement of merchandise where 10 per centum of the shipment had not been examined. In the first instance, vessels, not being merchandise, were not subject to appraisement, and in the second, the statute had not been followed in making an adequate examination of the shipment. In such cases a motion to dismiss should be sustained because of the absence of the elements of appraisement, *but the effect of such dismissal would not validate the appraiser's action.* In section 402 the various statutory values of merchandise are enumerated. In defining such values the statute requires certain necessary elements to be taken into consideration. In finding one of the statutory values to be the value of imported merchandise, the court is therefore required to consider whether these elements of value are present. If the plaintiff fails to prove all of the elements of value, in my opinion, the reappraisement is not dismissible as in cases where the elements of appraisement are lacking, but, unless said elements of value are admitted not to be in issue, the plaintiff is required to make full proof thereof or otherwise he has not made a *prima facie* case and the presumption attaching to the finding of value by the appraiser is not overcome. However, where the appraiser has proceeded to find a value, proven to be erroneous because of fact or law, as in the case now before us, clearly such value cannot be found by the court to be the legal value of the merchandise, nor can the appraised value be legally established as the value of the merchandise by the dismissal of the appeal to reappraisement. In such circumstances, under the mandatory direction of the statute, section 501, it is the duty of the court to proceed to find a legal value for the merchandise. If all of the elements to be proven are not present in the record upon which to base a legal value, it is the duty of the court to require the importer to produce additional evidence to enable the court to obey the mandate of the statute and to render a judgment declaring the value which the collector may use as the basis of his liquidation.

As the value of the shoes here imported has not legally been determined by the appraiser, and the trial court having been unable to find value from the evidence before it, in my opinion, the reappraisement should be remanded to the trial court and placed upon the docket for the production of additional evidence.

For the reasons stated, I concur in the opinion of my associate, Judge Brown, that the judgment of the trial court should be reversed and the case should be remanded thereto for a retrial

### DISSENTING OPINION

SULLIVAN, Judge: I dissent.- I believe the judgment entered by Judge Evans is correct on the facts and the law.