UNITED STATES *v.* SANDERS MFG. CO.

No. 4694.—Invoices dated Neuhaus am Rennweg, Germany, December 22, 1934, etc.
Entered at Nashville, Tenn., January 24, 1935, etc.
Entry No. 40–A, etc.

Second Division, Appellate Term

(Decided December 20, 1939)

*Webster J. Oliver,* Assistant Attorney General (*Samuel D. Spector,* special attorney), for the appellant.
*Moreau P. Estes* and *Moreau P. Estes, Jr.,* for the appellee.

Before TILSON, KINCHELOE, and DALLINGER, Judges

DALLINGER, Judge: This is an application for a review of the decision and judgment rendered by Brown, Judge, on April 22, 1938, in *Sanders Mfg. Co.* v. *United States,* Reap. Dec. 4302, 73 Treas. Dec. 1519.

The merchandise covered by reappraisement 110204–A, which consists of certain sand glasses, was invoiced at 37.50 marks per 1,000, plus packing, and was entered at the port of Nashville, Tenn., at 27.50 marks per 1,000, plus packing, and appraised at 37.50 marks per 1,000, plus packing.   On the consular invoice, which was prepared by the exporter, the following notation appears: "The market value of this merchandise for home consumption in Germany is as follows: RM. 37.50 p. 1,000 Stück."

At the first hearing held at Nashville, Tenn., on May 8, 1936, before Cline, J., the plaintiff offered in evidence the testimony of James J. Sanders, president of the plaintiff-corporation.   He testified that he purchased 100,000 sand glasses from Hollein & Reinhardt, which he entered at 27.50 reichsmarks per 1,000, plus packing; that the appraiser advanced the entered value to 37.50 reichsmarks per 1,000, plus 5.50 reichsmarks for packing, making the total of 43 reichsmarks per 1,000; that the imported merchandise was known

as 3-minute egg timers, hourglasses, or telephone-timers, as well as by the term sand glasses (a sample of the merchandise in question being in evidence as Exhibit 1); that although said merchandise was invoiced at 37.50 reichsmarks per 1,000, he did not either pay that price or agree to pay it; that he actually paid $1,132. for the entire shipment, or $11.32 per 1,000, which was equivalent to 27.50 or 28 reichsmarks per 1,000; that he did not pay this amount to Hollein & Reinhardt but to S. Hendrickson of Springfield, Tenn., exporters of tobacco, who were owed that amount by Aukersmith & Co. of Friedland, Germany; that in other words he purchased the Hendrickson account of $1,132. and sent it to Hollein & Reinhardt, the exporters herein, for 100,000 sand glasses; that on November 20, 1934, he received a quotation for similar merchandise from Heinrich Rammes at the price of 28.50 reichsmarks, less 3 per centum, or in American money $12 per 1,000 c. i. f. New York; that on December 17, 1934, he received an offer for sale from Walter C. Bruell at 28 reichsmarks per 1,000; that on November 17, 1934, he received an offer for similar merchandise from Robert Bosenberg at 31.50 reichsmarks or $12.50 less 3 per centum c. i. f. Baltimore, Md.; that on December 5, 1934, he received an offer for similar merchandise from Robert Scheidt at 26 reichsmarks per 1,000; that at the time of the importation herein the witness bought precisely similar merchandise from Heinrich Rammes and from Robert Bosenberg; that he purchased 100,000 sand glasses from Rammes, which was the usual wholesale quantity; that he purchased from 5,000 to 250,000, which in his opinion were wholesale purchases; that the said Rammes received for the merchandise $12. per 1,000 c. i. f. Baltimore, which was the equivalent of 28.50 reichsmarks per 1,000; that there was the usual trade discount of 3 per centum for all purchases; that about the same time he purchased 10,000 similar sand glasses from Robert Bosenberg for $125., which was the equivalent of 28.50 reichsmarks per 1,000.

On cross-examination he testified that Hollein & Reinhardt quoted to him a price of 37.50 reichsmarks; and that he did not recall that any mention was made of 5.50 reichsmarks for the cost of packing.

On redirect examination he testified that $1,132, in American money, plus the railroad freight in the United States was all that he paid through S. Hendrickson & Co. of Springfield, Tenn., for the 100,000 sand glasses at bar.

On re-cross examination he testified that he never accepted Hollein & Reinhardt's offer at 37.50 reichsmarks per 1,000, and that he had a cablegram in his possession showing that Hollein & Reinhardt accepted the barter price of $1,132.

At this first hearing a sample of the imported merchandise was admitted in evidence as Exhibit 1 and original letters and cablegrams

corroborating the offers testified to by the witness ordered marked Collective Exhibit 2 for Identification, and subsequently at a later hearing held at Nashville on November 2, 1937, before Brown, Judge, two of the letters in said exhibit were admitted in evidence as Collective Exhibit 2, over the objection of Government counsel.

At this second hearing, the plaintiff offered in evidence the purported affidavits of Heinrich Rammes and of Leo Stubeureich, which were admitted by the trial judge in evidence as Exhibits 3 and 4, respectively, over the objection of counsel for the Government.

In our opinion these exhibits should not have been admitted in evidence by the trial judge. While both documents have the word "affidavit" typewritten at the head of the statements in the English language on their face, the jurat in English at the bottom is not filled in. It is true that on the back of each document there is typewritten a statement in the German language, of which there is no English translation. It may be that these statements in a foreign language are jurats in proper form, but it certainly is not incumbent upon this court to translate them upon its own motion.

In the recent case of *Jose A Montemayor e Hijos* v. *United States*, 24 C. C. P. A. 7, T. D. 48288, the Court of Customs and Patent Appeals said at page 15:

Complaint is made that the appellate division erred in holding that the trial judge should not have admitted Exhibits 1, 2 and 3 in evidence. The trial judge admitted these documents. In applying for a review by the appellate division, the alleged error of the single judge was attempted to be raised by the Government's assignment of error 12. The division held that these exhibits were inadmissible, because they were written in the Spanish language, with no translation into English, although it had previously expressed the view that the twelfth assignment of error was not sufficient.

Usually the use of untranslated documents as evidence is regulated by the rules of the court in which the hearing is had. Such is the case in this court (see rule X), and had these exhibits been incorporated, untranslated, into the record in this court, they would not have been considered. We are disposed, however, to agree with the view taken by the appellate division as to their inadmissibility. There is respectable authority in support of such position. *Meyer* v. *Witter*, 25 Mo. 83; *Sartor* v. *Bolinger*, 59 Texas 411. In addition, an inspection of the documents discloses that they are mere unauthenticated documents, without any of the *indicia* of correctness which customarily accompany similar foreign documents when they are used as evidence in our courts.

Also at the second hearing the witness James J. Sanders was recalled by the plaintiff and testified that he purchased 100,000 sand glasses similar to the merchandise herein from Heinrich Rammes of Furth, Germany, for 26.51 reichsmarks per 1,000; that he also purchased 10,000 similar sand glasses from a German exporter by the name of Bosenberg; that he purchased similar sand glasses from three different firms for the reason that he had an order in this country for 100,000 and he was afraid that if he ordered 100,000 from one firm

only that that firm might fall down on the shipment and he would not be able to fill his American order; that the price paid for the three purchases varied a little but not more than $1 or 4 marks per 1000; and that the purchase prices paid in all three shipments was f. o. b. German port included packing ready to ship to the United States.

During the course of the cross-examination of this witness a carbon copy of a letter from the plaintiff to Robert Bosenberg of Hamburg, Germany, dated January 30, 1935, and of Bosenberg's reply dated February 14, 1935, were admitted in evidence as collective Exhibit 5. The plaintiff's letter reads as follows:

We recently ordered some Three Minute Sand Glasses from a firm in Germany through a Barter deal and they cost us $11.32 per M which is equal to about 26 RM in Germany, however, the firm we bought them from made out the invoice 37.50 RM and we explained to the Government that the general market price in Germany was around 26 RM per M and we have given your name to verify this price and no doubt you will receive a letter soon.

We are also referring them to other firms that have quoted us price of 26 RM per M.

The relevant portion of the reply reads as follows:

Your letter of January 30th, sent by air mail, has been received and I am sorry, that I cannot comply with your wishes, though I would gladly do everything I can to do so.

*The home market value*, which I have stated in my consular invoice, was RM 334.65 for the whole sending, *that is RM 33.47 per 1000 and this is the cheapest home consumption price, at which the manufacturer would deliver here to the trade, if cash payment is made.  Now if I would state, that the home consumption price is RM 26.—, I would not say the truth*, which at any time can be proved by your customhouse authorities, especially as my own consular invoice shows a home market value of RM 33.47 per 1000.

The price, at which you buy the sand glasses, is much cheaper as the German government grants all exporters a "Scrips" premium on merchandise sold for export.

\* \* \* \* \* \* \*

Regarding a barter deal with the firm Riemsch & Sohn and the firm in Springfield, please take note, that such a business could most likely be done, but before it is closed, I must apply for the permission of the German government authorities. \* \* \*. [Italics ours]

The witness then testified that he received a letter from Scheidt & Co., under date of January 30, 1935, in which he was quoted a price of 26 reichsmarks per 1,000. The Government then offered in evidence four reports of Treasury agents, which were admitted in evidence as Exhibits 6, 7, 8, and 9, respectively.

In Exhibit 6, dated March 5, 1935, it is stated by Treasury Representative John P. Griebel that the merchandise is freely offered to all purchasers for export to the United States at 37.50 reichsmarks per 1,000 without any trade discount; that similar sand glasses are not sold in the German market by Hollein & Reinhardt in the condition here imported; that the particular merchandise at bar was paid for

by a firm in Bremen which had purchased tobacco in the United States; that the price of 26.20 reichsmarks quoted by the plaintiff herein in his letter of January 29, 1935, was below the cost of production and could only be made with the use of "script," the permit to issue which had been denied to this firm (Hollein & Reinhardt); that there is in Germany an association of manufacturers that does not control resale prices, but does control the prices paid to home workers who make the sand glasses; that there was prepared a certain list of minimum prices to be charged in Germany for various kinds of sand glasses, but that it was not to become effective until February 21, 1935, which was after the last date of exportation of any of the merchandise herein.

In Exhibit 7, which is dated April 3, 1935, it is stated that Charles Kruszewski, Treasury representative, investigated the books and accounts of Heinrich Rammes at Furth, Bavaria, Germany; that said Rammes sold and exported sand glasses purchased from the German manufacturer at 28.50 reichsmarks per 1,000, less 3 per centum cash discount, packing included f. o. b. Hamburg, to the United States in quantities ranging from 10,000 to 30,000 on December 22, 1934, January 3 and 16, February 3 and 20, 1935, all at the price of $12 per 1,000 c. i. f. New York, packing included; that the said Heinrich Rammes is merely an exporter and does not sell any merchandise in Germany.

In Exhibit 8, which is also dated April 3, 1935, Treasury Representative Horace A. Browne states that he visited the Hamburg office of Robert Bosenberg and examined his books and records; that pursuant to an order dated November 30, 1934, calling for 10,000 pieces of 3-minute sand glasses at $12.50 per 1,000 c. i. f. Baltimore, the exporter paid the manufacturer for said merchandise 345 reichsmarks, less 3 per centum, f. o. b. Hamburg, cases and packing included; that the Sanders Manufacturing Co., the plaintiff herein, paid said Bosenberg $125. for said merchandise; that the said Bosenberg will receive an additional payment on account of scripts or blocked funds from the German Foreign Exchange Control Office under permit No. 68 for 78.75 reichsmarks, representing scripts to the extent of 25 per centum of the f. o. b. Hamburg value of the goods exported; that there is a 2 per centum tax on sales of this merchandise in Germany, which is refunded on exportation, Bosenberg having received a tax refund of 5.75 reichsmarks on this shipment; that the merchandise in question was offered by the exporter to Sanders Manufacturing Co., the plaintiff herein, at $12.50 per 1,000 f. o. b. Hamburg; that the merchandise in the amount of 10,000 was actually shipped at a price of $12.50 per 1,000 c. i. f. Baltimore; that altogether the exporter Bosenberg received $125. from the importer herein plus 78.75 reichsmarks from the German government; and that the said Bosenberg has made no sales or offers to sell sand glasses in the German market.

In Exhibit 9, which bears the date of April 4, 1935, Treasury Representative Kruszewski states that he visited the firm of Robert Scheidt & Co., at Furth, Bavaria, Germany, and found upon investigation that the said company had offered to sell to Sanders Manufacturing Co., the plaintiff herein, sand glasses at a price of 26 reichsmarks per 1,000 f. o. b. Hamburg, packing extra, if the quantity of 100,000 should be ordered; and that the said Scheidt & Co. did not sell or offer for sale similar sand glasses in Germany.

Upon this record we cannot find that the plaintiff has overcome the presumption of correctness which attaches to the appraiser's action in finding a foreign value for the merchandise herein. It is true that there is evidence that certain firms do not sell their merchandise which is similar to that here involved in Germany for home consumption, but that they are only engaged in the export business purchasing this merchandise from home workers in Germany. But for aught we know there may be other concerns dealing in such or similar merchandise who do sell in Germany for home consumption, or for export to countries other than the United States.

While there is evidence in the record establishing the export value of 28.50 reichsmarks per 1,000, plus packing, for the same or similar sand glasses, as found by the trial judge, nevertheless the only evidence in the record that there existed in Germany at the time of exportation of the merchandise at bar a foreign value of 28.50 reichsmarks for this or similar merchandise is the general statement to that effect in Exhibit 3 (which we have hereinbefore excluded), which is contradicted by Exhibit 8, and by the illuminating correspondence in Exhibit 5.

In their brief filed herein counsel for the plaintiff seriously contend that no presumption of correctness attaches to the appraisement of the local appraiser, and cite certain decisions of our appellate court in support of such contention. Unfortunately, however, the cited cases arose under the Tariff Act of 1922 in which there was no express statutory presumption of correctness in favor of the appraiser's action.

Section 501 of the Tariff Act of 1930, under which the instant appeals arose, specifically provides that "the value found by the appraiser shall be presumed to be the value of the merchandise and the burden shall rest upon the party who challenges its correctness to prove otherwise."

Counsel for the plaintiff also cites the case of *United States* v. *Malhame & Co.*, 19 C. C. P. A. 164, T. D. 45276. Far from supporting the contention made in the case at bar, the cited decision would seem to be to the contrary. In that case the United States Court of Customs and Patent Appeals said:

The issue is not whether the value returned by the appraiser is the proper dutiable value of the merchandise, but whether there is (a) a foreign value or/and

(b) an export value, and, if both, which is the higher, and the importer having been the appealing party in the first instance, it was incumbent upon it "to meet every material issue involved in the case." *Meadows, Wye & Co.* v. *United States, supra.* If the importer failed to do this, then his appeal was subject to dismissal by the trial court, in which event the value fixed by the local appraiser— in this instance the United States value—would have remained in full force and effect. *United States* v. *F. B. Vandegrift & Co. et al.*, 16 Ct. Cust. Appls. 398, T. D. 43120.

Under the rules stated it was incumbent upon the importer in this case, upon its appeal to reappraisement, to show, as in all judicial proceedings, (a) what the foreign value as defined by paragraph (b), *supra*, was, or that there was no such foreign value; and (b) what the export value, if any, as defined by paragraph (c) *supra*, was.

*If the importer failed to show any one of these essential elements, then his appeal was subject to dismissal by the trial judge.*

On the other hand, we cannot agree with the contention of counsel for the Government, stated in his brief filed herein, either that there was no evidence of the usual wholesale quantity of the merchandise herein, or that Judge Brown erred in admitting in evidence Collective Exhibit 5, as these exhibits clearly constituted proper evidence in an effort to impeach the credibility of the plaintiff's witness on cross-examination. Inasmuch as we have concluded that on the record the plaintiff has failed to sustain the burden resting upon it to disprove the existence of the foreign value, as found by the appraiser, it is unnecessary for us to consider the question raised in the brief filed by counsel for the Government before the trial judge to the effect that the existence of so-called "blocked marks" and the consequent payment of scrip by the German government to exporters of merchandise to the United States should be added to the price at which such merchandise was sold or freely offered for sale to all purchasers for export to the United States.

We are of the opinion, however, that the decision of Kincheloe, Judge, in the case of *Fisher Scientific Co.* v. *United States*, Reap. Dec. 4083, 72 Treas. Dec. 1022, affirmed by the Third Division in *United States* v. *Fisher Scientific Co.*, Reap. Dec. 4219, 73 Treas. Dec. 1375, holding that the amount obtained through payment of such scrip should not be added to the export value, is sound law.

Upon the established facts and the law applicable thereto ordinarily we would be inclined to hold that the plaintiff had failed to sustain the burden of overcoming the presumptive correctness attaching to the appraiser's action and that the decision and judgment of the trial judge should be reversed. In view, however, of the decision of the appellate court in *United States* v. *Titan Shipping Co. Inc.*, 25 C. C. P. A. 403, T. D. 49485, and also in view of the fact that the local counsel for the plaintiff evidently were unfamiliar with Customs practice, in the interest of justice we are constrained to reverse the trial court, and remand the case to the trial judge with directions to

order the case to be restored to the next Nashville docket for a rehearing for all purposes.

Judgment will be rendered accordingly.