KLYTIA CORP. *v.* UNITED STATES

**No. 4632.**—Invoices dated Levallois, France, July 12, 1929, etc.
Entered at New York July 26, 1929, etc.
Entry No. 719177, etc.

Second Division, Appellate Term

(Decided August 30, 1939)

*Carl W. Stern* (*Harry M. Farrell* of counsel) for the appellant.
*Webster J. Oliver*, Assistant Attorney General (*Dorothy C. Bennett*, special attorney), for the appellee.

Before TILSON, KINCHELOE, and DALLINGER, Judges

TILSON, Judge: This application for review of the decision of the trial court is before us the second time for consideration. In its first decision the trial court dismissed the appeals on the ground that the Customs Court was without jurisdiction to consider the same because it appeared from the record that the appellant-corporation was dissolved by a proclamation of the Secretary of State of the State of New York on or about December 15, 1934.

On the authority of the saving clause, section 29 of the General Corporation Law of the State of New York, as amended by L. 1932 Ch. 552, in effect March 31, 1932, the decision of the trial court was reversed by this division and the case remanded to the trial court for consideration on its merits upon the record presented.

In its decision which is now before us for review, the trial court stated as follows:

All but two of the entries covered by the reappraisement appeals before me were made during the life of the Tariff act of 1922. While there was no statutory presumption under that act in favor of the correctness of the appraiser's findings, nevertheless there is no substantial evidence before me to prove that the findings made by the appraiser as to the merchandise in issue under that act were erroneous. Under these circumstances I must dismiss the appeals taken from such findings; and judgment will issue accordingly. *United States* v. *Vandegrift & Co. et al.*, 16 Ct. Cust. Appls., 398, T. D. 43120, and *United States* v. *Woolworth Co. et al.*, 22 C. C. P. A. 184, T. D. 47126, cited.

As to reappraisements 99407–A and 99408–A, the entries in which cases were made after the passage of the Tariff Act of 1930, which, in section 501 thereof, contains the following provision:

The value found by the appraiser shall be presumed to be the value of the merchandise, and the burden shall rest upon the party who challenges its correctness to prove otherwise.

I find that the foreign market value, as that value is defined in section 402 (c) of that act, is the proper basis upon which the value of the merchandise involved should be determined, and that such value, in each instance, equalled the appraised value.

The examiner who passed the merchandise and who testified for the defendant herein at the trial of this case stated definitely that he did not allow the 12 per centum luxury tax, but that he only allowed a 40 per centum discount, whereas the plaintiff was claiming a 60 per centum discount. As this case was tried and presented, as we understand it, no question is raised as to the 12 per centum luxury tax. The merchandise in reappraisement 97410–A was invoiced and entered at certain unit prices less 60 per centum and less 12 per centum, and was appraised at the same unit prices less 40 per centum. There is nothing in this record to show that the action of the appraiser in adding back this 12 per centum tax was erroneous. As to the action of the appraiser in allowing only 40 per centum instead of 60 per centum discount from the unit prices, the situation is quite different.

It is true, as pointed out by the trial court, that the Tariff Act of 1922, under the authority of which all but two of these appeals were filed, contains no provision similar to that found in section 501 that:

The value found by the appraiser shall be presumed to be the value of the merchandise, and the burden shall rest upon the party who challenges its correctness to prove otherwise.

But there has always been a strong presumption that the acts of all Government officials made and done in line of their official duties were correct. The Tariff Act of 1922 contains no provision specifically making the acts of the collector presumptively correct, and yet in the case of *United States* v. *Lilly*, 14 Ct. Cust. Appls. 332, T. D. 41970, the appellate court, in holding that the acts of the collector were presumptively correct, said:

The collector, having classified the goods under said paragraph 217, when the matter came to the attention of the court below, the presumption was that he had found all the necessary facts to exist which brought the goods within that classification, and that his classification was correct.

It should be noted that the above holding was predicated upon the naked presumption of correctness attaching to the acts of all Government officials, without the fortification of a provision like that contained in said section 501, quoted above. If, as held by our appellate court, as pointed out above, the acts of the collector were presumptively correct under the Tariff Act of 1922, we feel equally justified in holding that the acts of the appraiser under said act were presumptively correct that he had found all the necessary facts to exist which authorized him to adopt the foreign-market value as the basis of his appraisement.

When the importer came to enter the merchandise in all the appeals listed in schedule A, hereto attached and made a part hereof, with the

exception of reappraisement 97410–A, which was the test case, he made what is known as duress entries, adding in each case an amount sufficient to make his entered value equal the appraised value in reappraisement 97410–A, citing in each case entry 719177, which is the entry in reappraisement 97410–A. On the Summary of Examination and Appraisement, we find the notation in red ink: "Duress Entry prices same as E. 719177," with the exception of reappraisement 97711–A, which is simply marked in red ink "Damage," but which was also entered under duress, as above stated. The marks or notations above referred to were placed upon the official papers in this case by either the examiner or the appraiser.

There is no evidence in this case which even tends to discredit or disprove the findings made by the appraiser in each case that the proper basis for appraisement was the foreign-market value, or that the usual wholesale quantity is the quantity represented by the invoice in each case, and that Levallois is the principal market in France for the sale of such or similar merchandise. Since the appraiser could not appraise the merchandise without finding all these facts, and since his act of appraisement is presumptively correct, we find and hold that the proper basis of appraisement is the foreign-market value, and that the export value, if one existed, was not higher, since if there had been an export value and it had been higher, the appraiser would have so found, that the usual wholesale quantity is the quantity represented by the invoice in each case, and that Levallois is the principal market in France for the sale of such or similar merchandise to that here involved. This leaves for decision the question of whether the discount from the unit prices should be 40 per centum, as found by the appraiser, or 60 per centum as contended for by the plaintiff.

With reference to the evidence offered by the defendant, in the form of a special agent's report, the trial court in its opinion stated:

It is necessary to add that I am of the opinion that the report of the Assistant Customs Attaché, standing alone, would be insufficient upon which to base a finding of foreign market value as that value is defined in section 402 of the Tariff Acts, supra, of the involved merchandise for the reason that, so far as the item of discounts is concerned the report specifically covers only the period from December 2 to December 4, 1929. None of the shipments involved were made during that time, and, as has been hereinbefore stated, the importations in issue were made during the period from July 1929 to July 1930. Manifestly, therefore, the report is incompetent as evidence upon which a finding of value might be based, although in the absence of other evidence, it may be said to tend to support the values found by the appraiser.

We construe the above quotation as a finding by the trial court that the report of the special agent did not prove or establish anything, with which finding, after a careful examination of said report, we find ourselves in accord. If said report was not sufficient upon which to base a finding of foreign-market value, it is certainly not sufficient

to overcome the presumption of correctness of the finding of the appraiser that the proper basis of appraisement of the merchandise in these appeals was the foreign-market value.

The plaintiff offered an affidavit by Joseph Font, in which, after properly qualifying himself, he states:

That the products have been sold and are being sold on basis of the white catalog prices hereto attached, duly signed by me, and that these prices are subject to a discount of 60 percent including all *special discounts, commissions, and percentages granted at the end of the year;* that the prices indicated in these price lists are the same as those marked on the labels attached to all the products, and are the sales prices which must be charged to the customers;

\*      \*      \*      \*      \*      \*      \*

*That the prices indicated above are those charged to our customers,* i. e. the "Klytia Corporation" of New York, 545 Fifth Avenue, *less the same discount of 60 percent and that the products sold to the Klytia Corporation are exactly the same as those sold to our customers in Paris, France, or Europe.* We further have only one type of products, and our specialties are uniformly manufactured and put up. [Italics ours.]

Of course if the 60 per centum discount referred to in the first part of the quoted affidavit included special discounts, commissions, and percentages, we would not be inclined to attach much weight to the affidavit, if it appeared from the record that special discounts, commissions, and percentages were granted at the end of the year, but it is clear from the second part of the affidavit, quoted above, that no special discounts, commissions, or percentages were granted at the end of the year, and the affiant specifically states in the second part of his affidavit, quoted above, that the prices indicated above are those charged to our customers, less the same discount of 60 per centum, and that the products are exactly the same as those in this case. The special agent makes no report of any special discounts, commissions, and percentages which are granted at the end of the year.

In the second affidavit introduced by the plaintiff, the affiant, A. Raimon, after thoroughly qualifying himself, stated:

That later in the year 1929 he was in France and purchased the perfumery and toilet products from the Institut de Beaute, which were shipped to him in case I. B. 1000/47, at the prices stated on the invoice less 60 percent.

That from his long experience (having been engaged in the manufacture and sale of perfumery and toilet products for over thirty-five years) in dealing with perfumery and toilet products in France in wholesale quantities he knows of his own knowledge that the prices he paid for the perfumery and toilet preparations shipped in the aforesaid case, I. B. 1000/47, were the usual wholesale prices for such merchandise in France in July 1929, and that in France said prices were subject to a discount of 60 percent (parenthesis not quoted).

When the second affidavit, quoted above, was offered in evidence, the trial court commented as follows:

I wouldn't be inclined to give much weight to this affidavit. These *ex parte* affidavits made by foreigners that are beyond the jurisdiction, unsupported by the

testimony of witnesses who are within the jurisdiction and can be held accountable for what they state, are of very questionable value, in my judgment. If it were discovered that his statement made in these affidavits were untrue there is no way these affiants could be punished.

When the Congress made provision for affidavits to be received in evidence in reappraisement cases, it was undoubtedly aware of the fact that the majority, if not all, of such affidavits would be executed and come from persons beyond the jurisdiction of the courts of the United States. If, as indicated by the trial court, only such affiants as were within the jurisdiction of the courts of the United States and could be punished for swearing falsely would make true and correct statements in affidavits, then it would appear that the Congress had made provision for the receipt in evidence in reappraisement cases of false and perjured testimony. We do not so construe the statute, nor do we believe that such was the intent of the Congress in enacting this statute.

On the other hand counsel for the defendant made no objection to this affidavit on the ground that he thought or suspected that it was false. Had said counsel so thought or suspected his duty would not have been properly performed had he not requested a continuance of the case for the purpose of having an investigation made to ascertain if said statements were false.

We find nothing in the record that in any way contradicts or discredits the sworn statement of affiant Raimon "that in France said prices were subject to a discount of 60 percent." We, therefore, find and hold that the affidavit of said Raimon is sufficient to overcome the presumption of correctness of the finding of the appraiser that a discount of only 40 per centum was allowed from the white catalog prices attached to said Exhibit 1, for such or similar merchandise to that here involved when sold in France.

That the tribunals of the United States Customs Court are the exclusive judges as to what weight shall be given affidavits in reappraisement proceedings was definitely held in the case of *Veolay* v. *United States*, 23 C. C. P. A. 101, T. D. 47766, as follows:

The record has been quite carefully examined with respect to the evidence upon which the tribunals of the Customs Court predicated their findings of fact.

·*The document principally relied upon by appellants is an affidavit* made jointly by four members of the French legal profession in which there are recitations of alleged practices in France under the French law, together with their views as to the proper construction of the law.

*That this affidavit was admitted and weighed by the tribunals of the Customs Court appears from all their opinions of record.* Apparently but *little weight was given it by the majority of the appellate division*, especially such parts of it as were merely matters of opinion, *and the failure or refusal so to do is assigned as error.*

*This does not constitute an error of law.*

*As this court has frequently had occasion to point out, the tribunals of the Customs Court are the exclusive judges as to what weight shall be given evidence presented in*

*reappraisement proceedings in the form of affidavits and other forms made admissible by the statute* (section 501, Tariff Act of 1922), *and when it appears that they have considered it, it is not the province of this court to pass upon their conclusion concerning its weight. Amtorg Trading Co.* v. *United States,* 21 C. C. P. A. (Customs) 532, T. D. 46975, with cases there cited. [Italics ours.]

For a case apparently holding that the tribunals of the United States Customs Court are *not* the exclusive judges as to what weight shall be given evidence presented in reappraisement proceedings in the form of affidavits, see *United States* v. *Semon Bache,* 25 C. C. P. A. 387, T. D. 49466.

After carefully considering and weighing all the evidence in this case we find as facts:

1. That the merchandise involved in the appeals to reappraisement listed in said schedule A consists of perfumery and other toilet articles imported from France during the period from July 1929 to July 1930.

2. That Levallois is the principal market in France for the sale of such or similar merchandise to that here involved.

3. That the usual wholesale quantities for such or similar merchandise in the country of exportation are the invoiced quantities represented by each of said appeals, as found by the appraiser.

4. That the proper basis for appraisement of this merchandise is the foreign-market value, and that the export value, if one existed, is not higher, as found by the appraiser.

5. That the proper discount to be allowed from the white catalog prices, attached to said Exhibit 1, is 60 per centum.

We, therefore, conclude as matter of law that the proper dutiable values of the merchandise represented by each of said appeals to reappraisement are as set out in finding of fact No. 5. The judgment of the trial court is accordingly reversed. Judgment will be rendered accordingly.