UNITED STATES *v.* KLYTIA CORPORATION (No. 4296) [1]

[1] C. A. D. 178.

United States Court of Customs and Patent Appeals, June 30, 1941

*Charles D. Lawrence*, Acting Assistant Attorney General (*William J. Vitale* and *Dorothy C. Bennett*, special attorneys, of counsel), for the United States.
No appearance for appellee.
John R. Rafter, *amicus· curiae*.

[Oral argument April 16, 1941, by Mrs. Bennett and Mr. Rafter]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON Associate Judges

GARRETT, Presiding· Judge, delivered the opinion of the court:

This is an appeal by the Government from the judgment of the United States Customs Court, Second Division, reversing that of the trial judge in a reappraisement proceeding relating to the dutiable value of perfumeries imported from France by appellee during a period extending from July 24, 1929, to July 11, 1930.

By reason of certain unusual circumstances relating to the legal status of Klytia Corporation (and probably in part by reason of it having been postponed from time to time awaiting a decision in another proceeding), the case has been "long drawn out." It was twice before both tribunals of the Customs Court and this is our second decision in the case. Our first decision, which did not relate to the merits of the controversy, was rendered October 30, 1940. *United States* v. *Klytia Corporation*, 28 C. C. P. A. (Customs) 228, C. A. D. 150. The facts relating to the legal status of the corporation were there set forth in full. Under the facts then appearing, we found that there had been no service upon appellee, or its counsel, of the printed record or of appellant's brief in the appeal to us, as required by our Rule XIX, and the case was continued to our February, 1941, session with permission to the Government to make service of the necessary papers not later than January 1, 1941.

From our former decision it will be seen that one Carl W. Stern was originally noted as attorney for Klytia Corporation and was recognized as such during the earlier proceedings below. He did not personally appear before the tribunals below, however, the appearance having been made "by Harry M. Farrell, Esquire, of counsel." It further appeared that Carl W. Stern died March 17, 1939. This was subsequent to the date (October 3, 1938) of the second decision of the trial judge, but prior to the date (August 30, 1939) of the decision of the appellate division reversing the judgment of the trial judge, from which decision of reversal the instant appeal to this court was taken. It further appeared that the only service of papers relating to the appeal to this court was made by mailing copies of same to Carl W.

Stern at the address given by him on the earlier notation of appearance. These were mailed October 24, 1939, about 7 months after Stern's death, and it was conceded that no service had been had upon any director or other representative of the Klytia Corporation, which, in the manner described in our former decision, had been dissolved on or about December 15, 1934. The dissolution order was issued subsequent to the appeals for reappraisement, but about a year and a half prior to the trial in which the evidence was introduced—June 22, 1936—and nearly 2 years prior to the first decision by the trial judge, rendered October 5, 1936.

Mr. Farrell, who is an enrolled attorney of the United States Customs Court and of this court, appeared at the trial below, and, being "of counsel" with Mr. Stern, represented the Klytia Corporation in the taking of the testimony, and submitted the case.

In our former decision we said:

Whether, upon the record before us, service upon Mr. Farrell would have been sufficient we need not here inquire, for no such service was made.

Following our former decision various proceedings have been had and different steps taken by the Government in an effort to make legal service of the papers necessary to support the appeal to us. These need not be recited in detail. An order of the court was entered in December, 1940, permitting substituted service upon the Secretary of State of New York, and it appears that on or about December 20–23, 1940, copies of the necessary papers were served upon Mr. Farrell by mail. The receipt of them is acknowledged by Mr. Farrell in an affidavit under date of December 23, 1940, filed in the office of the clerk of this court with a memorandum submitted by John R. Rafter, Esq., to whom permission had been granted to appear here as *amicus curiae*, December 24, 1940.

It is proper to say that in the course of the affidavit, Mr. Farrell stated:

My sole connection with the said Klytia Corporation case was my appearance therein before the United States Customs Court as counsel *for* Carl W. Stern, Esquire, attorney for the Klytia Corporation, during his lifetime and while said case was pending undecided in that court. I did not then have, and I have not since received, any authority, express or implied, to represent the Klytia Corporation in any capacity whatsoever, except that, while said case was pending undecided in the United States Customs Court, I had verbal authority from said Carl W. Stern to try said case for him in that court.

An examination of the four decisions below, to wit, Reap. Dec. 3950, 70 Treas. Dec. 1278; Reap. Dec. 4142, 72 Treas. Dec. 1124; Reap. Dec. 4404, 1 Cust. Ct. 636, and Reap. Dec. 4632, 3 Cust. Ct. 555, shows the appearance of "Carl W. Stern (Harry M. Farrell of counsel)" for Klytia Corporation.

Inasmuch as Mr. Farrell was duly recognized by the tribunals of the Customs Court as attorney for Klytia Corporation and did, in

fact, represent it in the proceedings there, being the only attorney appearing in person in its behalf, his later appearances being after Mr. Stern's death, it does not admit of doubt that had the papers in connection with the appeal to this court been properly served upon him at the time the appeal was taken, such service under the rules and practice of the courts would have been sufficient.

Rule XVI of this court provides:

The party seeking a review of any appealable decision of the United States Customs Court shall file with the clerk of this court, in duplicate, a concise statement of the errors of law and fact complained of, and a copy of such statement shall be served on the collector or on the importer, owner, consignee, agent, or attorney, * * * *who shall have regularly appeared* before said United States Customs Court on or before the date of such application. [Italics supplied here.]

Under the facts now appearing we think there can be no question but that the service upon Mr. Farrell above recited was sufficient to perfect the appeal and that we may now consider the case upon the merits.

In so holding it is not meant to imply that it was any part of Mr. Farrell's obligation or duty to appear before this court, nor is it intended to suggest that he has in anywise violated any rules of practice, or any rules of ethical conduct appertaining to his profession.

We come now to the merits. Fifteen entries are involved, thirteen of which were made under the Tariff Act of 1922, and two under the Tariff Act of 1930. All are listed in schedule A of record. What is referred to as the test case appears to be reappraisement 97410–A, the merchandise being entered by entry 719177 July 24, 1929. The merchandise involved in that entry was entered by the importer at unit invoice prices, less 60 per centum discount, less 12 per centum luxury tax, plus packing as invoiced. The local appraiser appraised it at unit invoice prices, less 40 per centum discount, packing included, which, the brief on behalf of the Government states, represented "foreign value as defined in Sections 402 (b) and (c) of the Tariff Acts of 1922 and 1930, respectively."

In the decision of the appellate division, it was stated:

When the importer came to enter the merchandise in all the appeals listed in schedule A, hereto attached and made a part hereof, with the exception of reappraisement 97410–A, which was the test case, he made what is known as duress entries, adding in each case an amount sufficient to make his entered value equal the appraised value in reappraisement 97410–A, citing in each case entry 719177, which is the entry in reappraisement 97410–A. On the Summary of Examination and Appraisement, we find the notation in red ink: "Duress Entry prices same as E. 719177," with the exception of reappraisement 97711–A, which is simply marked in red ink "Damage," but which was also entered under duress, as above stated. The marks or notations above referred to were placed upon the official papers in this case by either the examiner or the appraiser.

The brief on behalf of the Government states, in substance, that the Klytia Corporation was the exclusive United States agent of the foreign manufacturer and there was no export value for the merchandise. No question seems to have been made respecting this, and counsel for appellee conceded at the beginning of the trial below that no claim was being made for a deduction of the 12 per centum luxury tax, such concession evidently being made as a result of our decision in the case of *Veolay, Inc., J. E. Bernard & Co., Inc.* v. *United States*, 23 C. C. P. A. (Customs) 101, T. D. 47766.

So, the issue below related to the question of whether, as stated by the appellate division, "the discount from the unit prices should be 40 per centum, as found by the appraiser, or 60 per centum as contended for by the plaintiff."

During our study of the case we discovered a jurisdictional question in connection with the so-called duress entries which was not referred to by the tribunals of the Customs Court and which was not raised by counsel either below or here, but which under numerous authorities it is our duty to raise *sua sponte* and act upon. In the case of *Morris* v. *Gilmer*, 129 U. S. 315, 325, the Supreme Court of the United States said:

> * * * if the record discloses a controversy of which the court cannot properly take cognizance, its duty is to proceed no further and to dismiss the suit; and its failure or refusal to do what, under the law applicable to the facts proved, it ought to do, is an error which this court, upon its own motion, will correct, when the case is brought here for review. The rule is inflexible and without exception, as was said, upon full consideration, in *Mansfield, Coldwater &c. Railway* v. *Swan*, 111 U. S. 379, 382, "which requires this court, of its own motion, to deny its own jurisdiction, and, in the exercise of its appellate power, that of all other courts of the United States, in all cases where such jurisdiction does not affirmatively appear in the record on which, in the exercise of that power, it is called to act. On every writ of error or appeal, the first and fundamental question is that of jurisdiction, first, of this court, and then of the court from which the record comes. This question the court is bound to ask and answer for itself, even when not otherwise suggested, and without respect to the relations of the parties to it." To the same effect are *King Bridge Co.* v. *Otoe County*, 120 U. S. 225; *Grace* v. *American Central Insurance Co.*, 109 U. S. 278, 283; *Blacklock* v. *Small*, 127 U. S. 96, 105, and other cases.

In considering this jurisdictional question here it should be borne in mind that all the involved entries were made during the period extending from a time in July, 1929, to a time in July, 1930, and that thirteen of them were made under the Tariff Act of 1922, the other two being under the 1930 act, which acts so far as applicable to the matter under discussion were substantially the same.

It, therefore, becomes necessary to inquire as to the state of the law applicable to the entries *at the time they were made and at the time or times when the local appraiser acted.*

The merchandise involved in the test case was entered July 24, 1929, entry 719177, and appraised by the local appraiser at the advanced value on August 8, 1930. The appeal for reappraisement was received in the office of the clerk of the Customs Court August 26, 1930. An examination of the papers in the duress cases discloses that certificates in the usual form were filed by the importer, certifying in effect that advances in the original entered values were made to meet the advance made by the appraiser in the test case. Notwithstanding the filing of such certificates and the pending of the appeal in the test case, the local appraiser proceeded to appraisements in the duress cases and on various dates, ranging from on or about September 13, 1930, to March, 1931, appraised the merchandise at the advanced entered values—that is, he allowed in each case a discount of only 40 per centum instead of 60 per centum as claimed by the importer.

Upon the "Summary of Examination and Appraisement" attached to the invoice in each of the duress entries, there appears the following notation:

Prior to the time of filing the requisition for the return of this invoice both the invoice and the merchandise had come under the observation of the examiner for the purpose of appraisal. Neither the invoice nor the merchandise had come under the personal observation of the appraiser for the purpose of appraisal.

Each of the above notations was stamped "Aug 8 1930," which was the date of the appraisement in the test case. The natural presumption is that the local appraiser upon advancing the value in the test case made requisition for return of the invoices in the other cases and thereafter on different dates proceeded to appraise the merchandise involved in the respective duress entry cases upon the same basis as the appraisement in the test case.

The only appeal which is set forth in full in the record is the appeal in the test case, but in connection with it there is a certificate by the clerk of the United States Customs Court which reads "I hereby certify that appeal to reappraisement No. 97410-A is typical of all the other appeals enumerated in the petition," and the proceedings at the trial (which it may be said was delayed for some reason until June 22, 1936, when the evidence was introduced and the case submitted before the single judge), as well as all the decisions below, list all fifteen of the cases as being on appeal and all were included in the respective judgments, including, of course, the judgment of the appellate division now before us on appeal.

It is our view, for reasons hereinafter stated, that the *time* of these entries and appraisements being borne in mind, that the local appraiser erred in appraising the merchandise involved in the duress entries, and that it was not incumbent upon the importer to take appeals in those cases in order to obtain relief. If they were proper duress

entries it was only necessary, during that period, that he prosecute an appeal in the test case.

On February 21, 1930, we rendered a decision in the case of *Beaver Products Co., Inc. (F. W. Myers & Co.)* v. *United States,* 17 C. C. P. A. (Customs) 434, T. D. 43878, in which it was held by a majority as expressed in the second syllabus accompanying our opinion that—

(a) Where merchandise is entered under duress, is similar in character and value to the merchandise involved in the test case then pending on appeal, and the issues are similar, the entrant is not compelled to appeal to reappraisement to obtain the relief sought by his entry.

It is proper to say that Judges Hatfield and Lenroot filed a vigorous dissent to the majority opinion, but the rule announced by the majority was followed by the court in several subsequent cases, Judges Hatfield and Lenroot specially concurring, and in one case dissenting as to a certain point presented in the majority opinion, not relevant here.

In the case of *United States* v. *Fuchs & Lang Manufacturing Co.,* 18 C. C. P. A. (Customs) 460, T. D. 44760, decided March 25, 1931, we held (Judges Hatfield and Lenroot specially concurring) that when a duress entry was made under the statute, the local appraiser (we again quote from the syllabus) "must suspend his appraisement therein until the final decision of the test case on reappraisement or re-reappraisement then pending on appeal." See also the cases of *Innis, Speiden & Co.* v. *United States,* 19 C. C. P. A. (Customs) 1, T. D. 44789, decided April 3, 1931, and *United States* v. *Friedlaender Co.,* 19 C. C. P. A. (Customs) 334, T. D. 45498.

In the last-cited case, decided February 1, 1932, it was suggested by the majority, in substance, that if by reason of our former decisions undue delay in the trial of duress cases existed, the remedy for such a situation rested with the legislative, not the judicial, branch of the Government, and on July 12, 1932, there was enacted H. J. Res. 336 (47 Stat. Vol. 1, c. 473, p. 657) which, in substance, declared the "true intent and meaning" of the statutes pertinent to so-called duress entries to have been and to be different from that announced by the majority in the cases above cited. We have regarded that act as binding upon the court in all cases arising subsequent to its passage but we have not regarded it as retroactive in character. *United States* v. *Claflin,* 97 U. S. 546, 548. Therefore, inasmuch as the rules announced by the majority in the several cited cases were the controlling rules at the time of the importations and appraisements here involved, we are of opinion that, under the facts appearing, they should have been applied in the instant case; that it was incumbent upon the local appraiser to suspend his appraisement in the duress cases until the final determination of the test case, and that the importer was not required to take appeals in those cases. Such being the situation, it must be held that the local appraiser's appraisements in the duress

cases were premature and invalid, and it must also be held that those cases were never properly before the tribunals of the Customs Court for decision on their merits and hence the appeals as to them should have been dismissed on the ground that the appraisements were invalid. This should now be done, and the future procedure should be governed by the rule laid down in the *Friedlaender Co.* case, *supra*, where it was said in the controlling opinion of this court:

The important thing in such cases is that the appraisement in the duress cases be held in abeyance until the test case has been decided. When this right has been secured to the duress entrant, and the issue raised in the test case has been finally determined, the customs officials will proceed with the ascertainment of the facts necessary to a proper valuation and classification of the goods named in the duress entry. The appraiser will appraise the goods and report the various items of information required by section 500, Tariff Act of 1922, to the collector. If the importer's contention has been sustained in the test case, in whole or in part, the collector, if satisfied by this appraisement and by such official information as he may have that the case is similar, wholly or in part, as defined by us in *Beaver Products Co.* v. *United States,* 17 C. C. P. A. (Customs) 434, T. D. 43874, to the test case, shall be governed in the liquidation of the entry, wholly or in part, as the case may be, in accordance with the final appraisement in the test case. If he be not satisfied with the appraisement, he may appeal therefrom as provided by section 501 of said Tariff Act of 1922.

In such appeals two issues may be involved: First, is the case similar to the test case, wholly or in part? If it is, this will conclude the matter, wholly or in part, as the case may be. If it is not, the issue arises, namely, the *per se* value of the goods, as to such elements of the case as are not so similar. Thus, each party has a right to a full and complete hearing on the matters which are vital to a proper appraisement of the goods and liquidation of the entry. If the cases are wholly dissimilar, the matter will proceed in the usual way.

Attention is called to the language of this court in *United States* v. *Fuchs & Lang Mfg. Co., supra,* as indicating that the collector may exercise a discretion in duress cases as to whether an appraisement may be made or not. While certain expressions in the opinion may be thus construed, our conclusions in the case cited must be read in conjunction with what we have herein said, which indicates the more mature opinion of the court on this question.

We deem it proper to say as a matter of precaution and for the benefit of all who are or may become interested in the question that if the transactions involved here had taken place subsequent to the passage of H. J. Res. 336, *supra,* on July 12, 1932, the procedure followed, apparently, upon the record before us, would have been the proper procedure and this decision is not to be regarded as a precedent controlling any case arising subsequent to the enactment of that joint resolution.

With respect to the test case, the only question involved before us is whether there is any substantial evidence to support the findings of the appellate division, and upon this we may be quite brief.

The record contains two affidavits, one executed in France by a party by the name of Font, who described himself as general manager of the manufacturing concern by which the perfumeries were exported

from France, and the other executed in the United States by a party by the name of Raimon, who stated that he organized the Klytia Corporation (appellee here), and purchased perfumeries for it.

The appellate division weighed the statements made in the affidavits and disagreed with the trial judge as to their evidentiary value. The appeal to us is, of course, from the judgment of the appellate division reversing that of the trial judge, and we must consider it on that basis.

It is not our province in reappraisement proceedings to weigh the evidence when any is found, and we do not feel that we would be justified in holding that the findings of the appellate division with respect to the test case are not supported by some substantial evidence.

For the reasons indicated, the judgment of the United States Customs Court is *modified*. It is *affirmed* so far as it applies to reappraisement 97410–A, involving entry 719177, and *reversed* so far as it applies to all the other reappraisements, and the cause is *remanded* with directions that proper steps be taken to the end that the appeals for reappraisements as to those cases be dismissed upon the grounds stated, and for all other action necessary to conform to the views herein expressed.