(Reap. Dec. 11041)

ELOF HANSSON, INC. *v.* UNITED STATES

Entry No. 823721.

(Decided July 12, 1965)

*Sharp & Bogan (James R. Sharp* of counsel) for the plaintiff.
*John W. Douglas,* Assistant Attorney General *(Daniel I. Auster* and *Morris Braverman,* trial attorneys), for the defendant.
*Spray, Price, Townsend & Cushman (Robert C. Keck* and *Valentine A. Weber, Jr.,* of counsel) as *amicus curiae.*

RAO, Chief Judge: This is an appeal for reappraisement of an entry of hardboard, imported from Sweden. The specific question in the case is one involving the assessment of a dumping duty pursuant to the provisions of the Antidumping Act of 1921 (19 U.S.C. section

160, *et seq.*), the relevant portions of which read as follows at the time of importation:

§ 161. Amount of duty to be collected; determination of foreign market value of goods.

(a) In the case of all imported merchandise, whether dutiable or free of duty, of a class or kind as to which the Secretary of the Treasury has made public a finding as provided in section 160 of this title, and as to which the appraiser or person acting as appraiser has made no appraisement report to the collector before such finding has been so made public, if the purchase price or the exporter's sales price is less than the foreign market value (or, in the absence of such value, than the cost of production) there shall be levied, collected, and paid, in addition to the duties imposed thereon by law, a special dumping duty in an amount equal to such difference.

(b) If it is established to the satisfaction of the appraising officers that the amount of such difference between the purchase price and the foreign market value is wholly or partly due to the fact that the wholesale quantities, in which such a [or] similar merchandise is sold or freely offered for sale to all purchasers for exportation to the United States in the ordinary course of trade, are greater than the wholesale quantities in which such or similar merchandise is sold or freely offered for sale to all purchasers in the principal markets of the country of exportation in the ordinary course of trade for home consumption (or, if not so sold or offered for sale for home consumption, then for exportation to countries other than the United States), then due allowance shall be made therefor in determining the foreign market value for the purposes of this section.

§ 164. Determination of foreign market value.

For the purposes of sections 160–171 of this title, the foreign-market value of imported merchandise shall be the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is sold or freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade for home consumption (or, if not so sold or offered for sale for home consumption, then for exportation to countries other than the United States), plus, when not included in such price, the cost of all containers and coverings and all other costs, charges, and expenses incident to placing the merchandise in condition packed ready for shipment to the United States, except that in the case of merchandise purchased or agreed to be purchased by the person by whom or for whose account the merchandise is imported, prior to the time of exportation, the foreign-market value shall be ascertained as of the date of such purchase or agreement to purchase. In the ascertainment of foreign-market value for the purposes of said sections no pretended sale or offer for sale, and no sale or offer for sale intended to establish a fictitious market, shall be taken into account. (May 27, 1921, ch. 14, § 205, 42 Stat. 13; June 17, 1930, ch. 497, title IV, § 651(d), 46 Stat. 762.)

By stipulation of the parties entered into during the course of trial, the issue presented for determination in this action has been limited to the appraiser's finding of a foreign market value, within the purview of section 164, *supra*, of $22.98 per 1,000 square feet. The agreement between the litigants herein embodies the following terms:

1. That the subject merchandise consists of hardboard, exported from Sweden, as to which the Secretary of the Treasury issued a finding of dumping, which was published in 89 Treas. Dec. 197, T.D. 53567, made pursuant to the Antidumping Act of 1921 (19 U.S.C. § 160, *et seq.*).

2. That, pursuant to section 168 of the said Antidumping Act, the appraiser reported the purchase price (§ 162) of the merchandise covered by this appeal for reappraisement at $19.50 per 1,000 square feet, and the purchase price as thus reported is not disputed.

3. That, pursuant to section 168 of the said Antidumping Act, the appraiser also reported the foreign market value (§ 164) as to the merchandise covered by this appeal for reappraisement at $22.98 per 1,000 square feet.

4. That, pursuant to sections 500 and 402 of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, the appraiser appraised all of the merchandise involved in this appeal for regular duty purposes, and the appraiser's finding of such value under said section 402 is not challenged.

5. That the instant appeal for reappraisement relates to the foreign market value, referred to in paragraph 3, *supra*.

It was further agreed that the official papers in the instant case be received in evidence without the necessity of being marked as an exhibit.

The record otherwise consists of the testimony of Mr. Thomas E. Hill, assistant to the manager of the hardboard department of plaintiff corporation; correspondence between plaintiff and the manufacturer-exporter of the instant merchandise (plaintiff's exhibits 1, 2, 3, 4, 6, and 7); a contract, dated March 20, 1954, for the purchase of a quantity or hardboard of various thicknesses (plaintiff's exhibit 5); two affidavits of Mr. Bengt Johansson, the assistant sales manager of the wallboard department of the manufacturer-exporter (plaintiff's exhibits 8 and 9); and an affidavit of Mr. Gunnar Järryd, the assistant to the manager of the purchasing department of a Swedish purchaser of hardboard. All of the foregoing were introduced on the part of the plaintiff. No evidence was adduced by defendant.

It appears from the record as thus made that during February and March 1954, plaintiff conducted negotiations with the Swedish firm of Katrinefors Aktiebolag, hereinafter referred to as the "exporter" for the purchase of an exceptionally large quantity, to wit, upwards of 4 million square feet of hardboard, ⅛″ in thickness, size 4 by 8. This quantity was characterized by the witness as an "unusual large quantity," as contrasted with an ordinary order from any one of several suppliers in Sweden of a carload of 32,000 feet or 52,000 feet.

In consideration of the size of the order and a readiness to accept up to 25 percent of so-called "falling seconds," plaintiff proposed a

price equal to $25 per 1,000 square feet, net, C & F, New York. This price resulted from the deduction of two discounts claimed by plaintiff under the circumstance that "We understand that for large purchases Swedish manufacturers of hardboard are granting not only a 10% wholesale carload discount, but also a 10% special quantity discount to which we definitely feel that we are entitled on a contract of this magnitude." (Plaintiff's exhibit 1.)

The exporter first countered plaintiff's request with an offer to sell about 4,000,000 square feet of ⅛" hardboard for $26.30 per 1,000 square feet, net, C & F, New York (plaintiff's exhibit 2), but then almost immediately thereafter accepted plaintiff's proposition agreeing to ship some 4,000,000 square feet of ⅛" hardboard in equal lots on or about March 26, April 7, April 23, and May 5 (plaintiff's exhibit 3).

By letter, dated March 16, 1954, plaintiff confirmed its order for ⅛" hardboard at $30.85 per 1,000 square feet and 3⁄16" hardboard at $47.50 per 1,000 square feet, C & F, New York, subject to "10% wholesale carload discount and 10% special quantity discount," with instructions as to marking, packing, and shipment (plaintiff's exhibit 4), and a formal contract for the sale of 4,050,720 square feet of ⅛" hardboard and 99,840 square feet of 3⁄16" hardboard (plaintiff's exhibit 5) was executed by the exporter on March 20, 1954, wherein the following arrangements for shipment were specified:

About 350 tons by the Minnesota 26/3, about 365 tons by the Stockholm 7/4, about 265 tons by the Kungsholm 24/4 and about 265 tons by the Stockholm 5/5.

According to the affiant Johansson, during the period between 1953 and 1958, the exporter entered into two contracts with the plaintiff for "very unusually substantial quantities of Hardboard." These included the contract in evidence as plaintiff's exhibit 5, identified as order No. 78. In view of the size of the two transactions, special discounts were allowed by the exporter. On order No. 78, the discounts were 10 percent wholesale carload and 10 percent special quantity. On the second contract, order No. 6542, dated February 9, 1955, which involved the sale of 3,000,000 square feet of hardboard, a single quantity discount of 10 percent was allowed.

Mr. Johansson further averred:

* * * that it was our policy at the time of these master contracts to grant buyers in Sweden and in all countries, to which we exported, discounts of an equal amount for commitments of quantities of Hardboard at approximately the same level as those ordered by Elof Hansson, Inc.

The fact that such discounts were available to purchasers in Sweden and elsewhere was conveyed at various sales meetings and conventions, which we held, where representatives of our sales department mingled with the large buyers, both in the Swedish market and the European continental markets, and the fact that such discounts were available, became common knowledge amongst the large buyers of our Hardboard at the time.

It was the statement of Mr. Järryd in plaintiff's exhibit 10 that, during the years 1954 and 1955, representatives of the exporter at various sales meetings offered his company "10–15% quantity rebate" for a quantity of about 1,700,000 square feet of ⅛" hardboard. No purchase was made, however, because his company received more favorable offers from elsewhere.

.It is the position of the plaintiff in this case that the appraiser's determination of foreign market value, within the purview of section 164, *supra*, was improper for failure to deduct the two quantity discounts alleged to have been allowed by the exporter in transactions of this kind. The contention is made that the evidence suffices to establish, at least *prima facie*, that the 10 percent wholesale carload and 10 percent special quantity discounts were allowed to all purchasers of large quantities, and that, therefore, the burden shifted to the Government to adduce evidence in support of the appraiser's determination of foreign market value.

Both counsel for defendant and *amicus curiae* allege that the instant record is inadequate to overcome the presumptively correct value returned by the appraiser for the reasons, *inter alia*, that it has not been here shown that the discounts in question were freely offered to all purchasers in Sweden, in the usual wholesale quantities and in the ordinary course of trade, and, moreover, that it has not been established that the appraiser did not allow these two quantity discounts in returning foreign market value.

At this point, it seems appropriate to observe that it is not entirely clear from the instant record that the merchandise at bar was covered by the contract negotiated between the plaintiff and the exporter, which has been received in evidence as plaintiff's exhibit 5. By the terms of that document, the hardboard contracted for should have been forwarded to the plaintiff in relatively equal shipments, the last of which should have left Sweden via the S.S. Stockholm on or about May 5, 1954. From the official papers which are in evidence, it appears that the subject merchandise was shipped from Sweden, on or about December 31, 1954, pursuant to a purchase order, dated October 1, 1954, for 64,128 square feet at $30.85 per 1,000 square feet, less wholesale carload discount of 10 percent, less special quantity discount of 10 percent.

The only evidence tending to link the present shipment with the transaction to which all the other documents in evidence relate is the statement in the commercial invoice mentioning the importer's order number of 78 and the exporter's reference number 96063 F, these being the same as specified in the original contract between the parties. All other documents of record apparently suggest a separate contract for the subject 64,128 square feet, which, although much

less than the unusually large quantity originally ordered, received the benefit of the special quantity discounts here involved.

Of course, if the instant shipment was not embraced by the contract of March 20, 1954, in view of the fact that the evidence does not specifically relate to conditions obtaining in Sweden at the time of the order for the subject merchandise, or at the time of exportation thereof, there would appear to be a total failure of proof as regards the present importation. However, since it appears that the instant shipment has been brought within the purview of the contract transaction by virtue of identity of order number, the issues in this case will be resolved without further reference to this situation.

Although the determination of the appraiser which is here challenged is a finding of value made pursuant to the Antidumping Act of 1921, *supra*, rather than pursuant to the valuation provisions of the Tariff Act of 1930, it is, nevertheless, a finding of value within the scope of 28 United States Code, section 2633. By the terms of said provision, the appraiser's determination of value is presumed to be the value of the merchandise in issue, and the burden rests with the party who challenges it to prove the contrary. It is, by now, settled law that, in discharge of this statutory burden, the party who seeks to upset the presumptively correct value returned by the appraiser must show that the action of the appraiser was erroneous and that the claimed value is proper. To prevail, it is necessary to establish all of the material elements in the basis of value which is claimed to be applicable. Otherwise, the appraiser's return must stand. *Brooks Paper Company* v. *United States*, 40 CCPA 38 C.A.D. 495; *United States* v. *Fisher Scientific Company*, 40 CCPA 164, C.A.D. 513; *Kobe Import Co.* v. *United States*, 42 CCPA 194, C.A.D. 593. Morever, "[I]t was not incumbent upon the Government to prove that the appraised value was proper, until or unless the importer had shown said appraisement to be erroneous and established a different value in place thereof." *Kenneth Kittleson* v. *United States*, 40 CCPA 85, C.A.D. 502.

In the instant case, it was incumbent upon the plaintiff to establish a foreign market value different from that determined by the appraiser in strict accordance with every element specified in section 164, *supra*. While, under certain circumstances, the return of an appraiser may be challenged in part, and adopted as presumptively correct as to the remaining elements, it must appear that the value which he found is separable, and the challenging of one or more phases of his determination does not destroy the effect of the balance. *United States* v. *Joseph Fischer et al.*, 35 CCPA 96, C.A.D. 377; *United States* v. *Supreme Merchandise Company*, 48 Cust. Ct. 714, A.R.D. 145.

Although, as heretofore observed, it is the position of the plaintiff herein that the appraiser's determination of foreign market value was

erroneous for failure to allow in his computation the two claimed discounts, the return itself does not evidence the alleged omission. Here, there is a finding that the foreign market value of hardboard such as in involved in this case was $22.98 per 1,000 square feet, packed, with no indication of the method by which this value was computed. There is no permissible inference that the appraiser arrived at his finding in accordance with any particular mathematical formula. As this court had occasion to state in the case of *S. S. Kresge Co. et al.* v. *United States*, 45 Cust. Ct. 469, Reap. Dec. 9778, in connection with the question of inland charges—

* * * That a mathematical computation might tend to indicate that the appraiser divided the number of square feet of rugs imported into the specified charges and increased the invoice unit values to that extent, does not necessarily suggest that he so acted. It may be coincidence that such results ensue, for it is equally possible that he found the charges excessive and the *per se* values inadequate, and made his computation accordingly. In view of the way the appraised value was expressed, the court may not, without proof, inquire into the methods by which it was ascertained. To challenge the item of the charges under such circumstances, is to bring into question the remainder of the appraisement and to destroy the foundation upon which it is based.

So, too, in the present circumstances, to challenge the item of discounts is to bring into question the remainder of the determination of foreign market value. There was, therefore, no shortcut for the plaintiff in this case. It could not, simply by showing that discounts were allowed on certain unusually large purchases, upset the appraiser's return and establish the merit of the claimed value. It was necessary for the plaintiff to prove the price of hardboard in the principal markets of Sweden in the usual wholesale quantities and in the ordinary course of trade.

Here, as has been astutely observed by counsel for the Government, the record is silent as to any price at which hardboard was offered for sale. All that the proof may be said to establish is that in Sweden discounts were allowed for commitments to purchase commensurately large quantities as those contracted for by plaintiff and that large buyers were aware of the fact that such discounts were available. It does not establish the prices from which these discounts were allowed, nor whether or not the discounts were available to all purchasers, nor the usual wholesale quantities in which such merchandise was offered for sale, all of which are necessary elements in an affirmative showing of a foreign market value different from that returned by the appraised. *Valley Knitting Co., Inc., et al.* v. *United States*, 44 Cust. Ct. 599, Reap. Dec. 9627; *United States* v. *American Glanzstoff Corp.*, 24 CCPA 35, T.D. 48308; *United States* v. *Mexican Products Co.*, 28 CCPA 80, C.A.D. 129; *Bruce Duncan Co., Inc. a/c Vandenberg L. Mead Enterprises et al.* v. *United States*, 53 Cust. Ct. 438, Reap. Dec.

10832; *Brooks Paper Company* v. *United States, supra; United States* v. *Fisher Scientific Company, supra; Kobe Import Co.* v. *United States, supra.*

Ostensibly, at least, it must seem that discounts labeled as special quantity discounts are extraordinary discounts granted for purchases in excess of the usual wholesale quantities, and if the designation of the discounts here in question has any other significance, the record does not show it. Indeed, there is a complete failure of evidence to show the usual wholesale quantities in which such or similar hardboard was offered for sale. *Cf. Brooks Paper Company* v. *United States, supra.* In this respect, the cases of *Indussa Corp.* v. *United States,* 47 CCPA 93, C.A.D. 736, and *Klytia Corp.* v. *United States,* 3 Cust. Ct. 555, Reap. Dec. 4632, relied on by plaintiff, are clearly distinguishable.

In the *Indussa* case, *supra,* the proof contained "a price list of all of the coated cast iron articles offered for sale by the manufacturer, a statement of its wholesale discount procedure, and a list of its wholesale transactions for a six month period. * * *"

The record in the *Klytia* case, *supra,* contained an affidavit to which was attached a catalog of the prices for all sales of the company's products.

Since the instant record is barren of evidence to establish the material elements in support of the value claimed by the plaintiff, it necessarily follows that the presumptively correct value found by the appraiser has not been negatived.

In view of the foregoing considerations, the court makes the following findings of fact:

1. The merchandise covered by this appeal for reappraisement consists of hardboard, exported from Sweden on or about January 5, 1955.

2. The Acting Secretary of the Treasury issued a finding of dumping, pursuant to the Antidumping Act of 1921 (19 U.S.C. § 160, *et seq.*), which was published in 89 Treas. Dec. 197, T.D. 53567.

3. Pursuant to section 168 of said Antidumping Act, the appraiser reported the purchase price, as defined in section 162 of said act, as $19.50 per thousand square feet, which finding is not contested.

4. Pursuant to said section 168, the appraiser determined the foreign market value, as defined in section 164 of said act, at $22.98 per thousand square feet.

5. The appraiser's finding of value within the provisions of section 402 of the Tariff Act of 1930 is not here questioned.

6. The evidence is insufficient to establish any other foreign market value than that determined by the appraiser.

7. There is no evidence to support the contention that the appraiser failed to consider and/or allow special quantity discounts.

The court, therefore, concludes that—

1. The plaintiff has failed to overcome the presumptively correct values returned by the appraiser.

2. The purchase price and foreign market value, as those values are defined in sections 162 and 164, *supra*, are as returned by the appraiser.

3. In all other respects, the values of the subject merchandise are as returned by the appraiser.

Judgment will be entered accordingly.